**STATE**

v.

**William McDONALD.**

No. 90–324–C.A.

Supreme Court of Rhode Island.

Jan. 6, 1992.

James E. O'Neil, Atty. Gen., Aaron Weisman, Special Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

WEISBERGER, Justice.

This case came before us on the defendant's appeal from a judgment of conviction on five counts of an indictment that charged the defendant, William McDonald, with four incidents of sexual assault on one of his daughters (Beth) and one incident of assault with intent to commit sexual assault on another of his daughters (Doris). Pseudonyms are used in place of the victims' names. The first count charged the defendant with first-degree sexual assault allegedly committed on April 1, 1987, when Beth was slightly more than sixteen years of age. In this incident, Beth testified, her father committed a digital penetration of her vagina. Count 2 also alleged sexual penetration. Count 3 alleged forcible penetration, but by agreement of the parties this count may be dismissed at this stage for insufficient evidence. Count 4 alleged that the defendant committed a second-degree sexual assault on Beth on a date between October 1984 and April 1, 1987. Count 5 alleged an assault upon the daughter Doris with intent to commit sexual assault on a date between January 1 and December 21, 1986. We sustain the appeal in part and deny it in part. The facts of the case insofar as pertinent to this appeal are as follows.

On April 1, 1987, Beth was at home with her father and her infant nephew, Eddie, for whom she was babysitting. While she was feeding the child with his bottle, defendant began to tickle her. Suddenly he reached under her blouse and grabbed her breasts. He then pushed her into his bedroom, kissed her all over, and ultimately placed his hand inside her vagina. He then threatened her with a beating if she told her mother.

In respect to count 2, Beth testified that her father touched her "in the vagina" at some time when she was fifteen years of age.

In support of count 4 Beth testified that her father on another occasion wrestled with her and then proceeded to kiss and touch her in such a fashion as to bring about sexual arousal. This was done at some time between October 1984 and April 1, 1987, when the first-degree sexual assault took place.

Count 5 involved an encounter between defendant and his youngest daughter, Doris. She testified that at some time prior to Christmas Day 1986, defendant tried to kiss her and began putting his hand under her shirt in an attempt to touch her breasts. Doris stated that she realized what he was attempting to do and kicked him between the legs.

In support of his appeal, defendant raises a number of issues. These issues shall be considered in the order of their significance to this opinion. Further facts will be supplied as may be necessary to deal with the issues.

I

### The Denial of a New Trial in Respect to Counts 1 and 4

The defendant argues that although testimony may have been adduced that was sufficient to sustain count 1 as against a motion for judgment of acquittal, the trial justice erred in denying the motion for new trial in regard to both counts 1 and 4. This argument is based upon the undisputed fact that Beth had told a number of people that her father had not assaulted her. Among these people were Karen DeOrcey, a DCF worker, Attorney Terrance Donley, and her sisters, Donna and Hopey. She told a physician who examined her that defendant had never penetrated her (although she claimed later that she thought this question referred to penile intercourse). She also wrote to her father recanting the allegations.

During her testimony Beth explained these inconsistent statements by saying that her two sisters Donna and Hopey had placed great pressure upon her not to testify against their father. The trial justice specifically considered these recantations

and in respect thereto delivered the following comments:

"The Court had an opportunity to observe the demeanor of this young lady, [Beth], and the Court was fairly convinced that she was under substantial trauma, mental strain. She had no motive to come into this courtroom to hurt her father, who in fact she said she still loved * * *. In the end she felt compelled to come in here, and I considered then and I consider now, she told the truth during the trial * * * .

"When she was asked, do you know what the doctor meant when he had asked you if you were ever penetrated, do you know what he meant by that? * * * She said yes, I know. That question involved an issue as to whether or not the Defendant ever put his penis into her. She never said that. She was candid and she said no * * *.

"[T]here were some pictures that were introduced showing that she did spend time with her father, that she had visited and went to the Bowl–A–Rama. I make a note too that Donna had taken these pictures. Of course Donna and Hope, two siblings, obviously, from the testimony of [Beth], and as well as to some extent [Doris], it was clear that they were upset over this proceeding and would well have preferred that [Beth] and [Doris] not pursue it. There is an adequate explanation * * *. Unlike some of these similar cases where the juries have discerned by determining a motive of vindication, or retaliation, or sometimes, as in the case where an element enters where the person fantasizes, clearly there was none of this in this trial. The Court was convinced with the candor and honesty of the testimony and the adequacy of the specificity required under law."

In summary the trial justice, after considering the evidence together with the recantations, found Beth's testimony to be convincing and credible.

■ It is well settled in this state that a ruling by a trial justice on a motion for new trial is entitled to great weight, and when the trial justice has carefully reviewed the evidence, his or her determination will be set aside on review only if he or she overlooks or misconceives material evidence or is otherwise clearly wrong. *State v. Dame*, 560 A.2d 330 (R.I.1989); *State v. Henshaw*, 557 A.2d 1204 (R.I.1989).

■ In the case at bar the trial justice obviously considered all the relevant and material evidence, including the recantations. After having analyzed the evidence and drawn reasonable inferences therefrom, he concluded that Beth's testimony at trial was credible and that her recantations were not credible. In so finding we cannot say that he was clearly wrong.

## II

### Counts 2 and 3

■ After analyzing the testimony in respect to counts 2 and 3, we are in agreement with the state that count 3 is not supported by the evidence. Moreover, we are in agreement with defendant that count 2 is not supported by the evidence. Count 2 alleged digital penetration. In support of this count Beth testified on redirect examination that her father had touched her "in the vagina." We are of the opinion that in respect to such a serious allegation, precise and specific testimony is necessary to support it. Actually Beth also testified in the same redirect examination that her father had touched her "in the breasts." To infer penetration from Beth's testimony would be to draw an inference that could scarcely justify a finding of digital penetration beyond a reasonable doubt.

Consequently defendant's appeal is sustained in regard both to count 2 and to count 3.

## III

### Count 5

■ Count 5 charges defendant with an attempt to commit second-degree sexual assault upon his daughter Doris. This count of the indictment alleges a violation of G.L. 1956 (1981 Reenactment) § 11–5–1, as amended by P.L.1981, ch. 76, § 1. The stat-

ute provides penalties for persons "who shall make an assault with intent to commit murder, robbery, sexual assault, burglary, or the abominable and detestable crime against nature." The section further provides for a penalty not exceeding twenty years' imprisonment or less than one year for such offenses.

Prior to 1981 the sexual crime proscribed by § 11–5–1 was the common law crime of rape. Rape was punishable by a minimum of ten years and a maximum term of life imprisonment. In 1979 the General Assembly amended chapter 37 of title 11, which had provided penalties for rape and seduction and substituted for these terms the crime of "sexual assault."

General Laws 1956 (1981 Reenactment) § 11–37–2 defines first-degree sexual assault as "sexual penetration with another person" in certain statutory circumstances. Section 11–37–3 provides the penalty for first-degree sexual assault as not less than ten years and a maximum of imprisonment for life. Section 11–37–4 defines second-degree sexual assault as "sexual contact * * * for the purpose of sexual arousal, gratification, or stimulation." This section requires the use of force or coercion. The penalty for second-degree sexual assault as set by § 11–37–5 is not less than three years and not more than fifteen years' imprisonment.

The chapter goes on in § 11–37–6 to define third-degree sexual assault as an act of sexual penetration by a person over the age of eighteen with another person between the age of thirteen and less than the age of sixteen years (without force or coercion). The penalty for third-degree sexual assault is imprisonment for not more than five years.

The chapter goes on in § 11–37–8 to provide a penalty for assault with intent to commit first-degree sexual assault. In this section the penalty is not less than three years' or more than twenty years' imprisonment. It should be noted that this penalty is similar to that provided by § 11–5–1 wherein the range of imprisonment is not less than one year or more than twenty years.

The state argues that § 11–5–1 should be applied to any degree of sexual assault. With this position we must respectfully disagree. If we were to follow the state's argument to its drily logical extreme, we would be interpreting the statute so that an attempt would be punishable by more than the substantive offense.

■ We believe that the only reasonable interpretation of this statutory scheme is to attribute to the Legislature the intent to substitute for the word "rape" that crime which was later defined as first-degree sexual assault, not any of the lesser degrees that describe differing, and in some instances less serious, offenses. It is a familiar principle in statutory interpretation that this court will not attribute to the Legislature an intent to enact laws that lead to absurd or unreasonable results. *See, e.g., Trembley v. City of Central Falls,* 480 A.2d 1359 (R.I.1984); *Coletta v. State,* 106 R.I. 764, 263 A.2d 681 (1970); *Town of Scituate v. O'Rourke,* 103 R.I. 499, 239 A.2d 176 (1968).

Although the Legislature might wish to bring more precisely the provisions of § 11–5–1 in conformity with the provisions of § 11–37–8, the result would not be achieved by exacerbating the problem in an overbroad and unreasonable interpretation of § 11–5–1.

IV

The Testimony Elicited on
Redirect Examination

The defendant argues that the testimony elicited in support of count 4 was improperly admitted because it was brought forth on redirect examination, was not within the scope of cross-examination, and was produced by leading questions. Actually defendant's argument related to counts 2 and 3 as well, but since they have been dismissed on other grounds, the argument now relates only to count 4.

We are of the opinion that this argument must fail since we believe after examination of the record that the redirect examination was within the scope of the cross-examination. Consequently the trial jus-

tice did not abuse his discretion in allowing the exploration of these issues. *See State v. Burke*, 529 A.2d 621 (R.I.1987). We believe further that the questions were not leading as that term is defined in *State v. Girouard*, 561 A.2d 882 (R.I.1989). Therefore, defendant's argument on this issue is unavailing.

## V

### The Motion to Pass the Case

During Beth's testimony, she blurted out in answer to an unrelated question a reference to probation in these terms:

> "You (the prosecutor) told me that the trial was going to be—if he would have went for that probation, that the trial wouldn't be taking place."

■ This answer was given in response to a question concerning why she had seen her father in the summer of 1989. We do not believe, as the trial justice did not believe, that this answer was deliberately or even rationally produced by the question.

This conclusion leaves us with the problem of determining whether the trial justice abused his discretion in declining to declare a mistrial. The standard for his response to such a motion is set forth in *State v. Padula*, 551 A.2d 687 (R.I.1988). He or she must assess the prejudicial impact of such a comment and determine whether the prejudice is so ineradicable or inexpiable that the motion to pass must be granted. If the prejudice can be cured, a timely and effective instruction must be given. *State v. Brown*, 522 A.2d 208 (R.I.1987). In the case at bar the trial justice instructed the jurors that they should completely disregard Beth's response. We cannot say that this comment would so distract the jurors' attention from the issues in the case as to make them unable to decide the case on the basis of the evidence presented. The trial justice had the front-row seat. His determination must be given great weight and will not be disturbed unless clearly wrong. *State v. Collazo*, 446 A.2d 1006 (R.I.1982). In the case at bar we

believe that he did not abuse his discretion, nor was he clearly wrong.

For the reasons stated, the appeal is denied in part and sustained in part. The judgment of conviction is affirmed as to counts 1 and 4. The judgment of conviction is reversed as to counts 2, 3, and 5. The case may be remanded to the Superior Court with directions to the trial justice to resentence the defendant on count 1, since he initially sentenced the defendant on counts 1 and 3 together. Our dismissal of count 3 by agreement of the parties would require that this sentence be reconsidered and reimposed. Counts 2, 3 and 5 of the indictment shall be dismissed.