STATE

v.

**Michael LANE.**

No. 91–390–C.A.

Supreme Court of Rhode Island.

June 12, 1992.

James E. O'Neil, Atty. Gen., Aaron Weisman, Sp. Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Michael H. Devlin, North Providence, for defendant.

## OPINION

MURRAY, Justice.

The defendant, Michael Lane, was indicted on June 16, 1988, by a Providence County grand jury on one count of assault with a dangerous weapon in a dwelling house with intent to murder (count 1) and one count of assault with intent to murder (count 2). The defendant's pretrial motion to dismiss count 2 as a lesser included offense of count 1 was granted, and the matter proceeded to trial on November 20, 1991. The jury returned a guilty verdict on November 28, 1991, and the defendant is before us on appeal from the judgment of conviction. The facts of the case follow.

The defendant and Linda Coughlin (Linda) lived together in a Cranston apartment for approximately five years between 1981 and 1987. The two were never married but lived as husband and wife and had two children during this period. The relationship was volatile, however, and in February 1987 Linda asked defendant to leave. The defendant agreed and moved in with a friend. During the next four months defendant kept in contact with Linda and talked with the children on a daily basis.

In June 1987 Richard LeClair (Richard) learned that Linda and defendant were no longer living together and asked Linda out on a date. Linda accepted and within a few days Richard was spending the night at Linda's apartment. Shortly thereafter, on June 13, 1987, defendant learned from a friend that Richard was staying with Linda. The defendant became angry and told his friend that he would straighten things out. The following afternoon he called Linda and asked whether Richard was at the apartment. Linda answered in the negative even though Richard was at the apartment, and the two argued over the phone. The defendant called Linda at least twenty more times that evening, each time saying that he knew Richard was there and demanding to know why she was seeing Richard. Linda kept denying defendant's accusations and asked defendant to stop calling her because the children were scared. Finally, at one point late in the evening, Richard took the phone from Linda and told the caller to leave Linda alone. Richard could not identify the caller's voice, but he assumed from Linda's response that defendant was on the line. Richard then told the caller that Linda did not want to be bothered anymore and that it was time for him to grow up. After Richard hung up, Linda became frightened that defendant would come over to the apartment and told Richard to leave. Richard responded that there was nothing to worry about and stayed in the apartment.

At approximately 2 a.m. Richard and Linda awoke to a loud banging at the door. Richard got out of bed and went to the living room where he saw defendant standing with a knife. The two men approached each other, and defendant stabbed Richard in the abdomen. After a brief struggle Richard escaped to the bedroom and attempted to close the door behind him. Linda became frightened and ran out of the apartment to get help, and defendant continued the assault, repeatedly threatening to kill Richard. He pursued Richard into the bedroom by forcing the door open enough to stab Richard in the leg. Richard fell into a crouched position on the floor and pleaded with defendant to stop the attack. The defendant ignored the pleas and stabbed Richard in the head six times before running out of the apartment.

At trial defendant testified that he had gone to Linda's apartment the night of the attack because he wanted to get some sleep and that he banged down the door because he had forgotten his keys. He further testified that as he entered the apartment Richard attacked him with a knife, and that he took the knife away from Richard and stabbed Richard in self-defense. At the end of the four-day trial the jury returned a guilty verdict on the lesser included offense of assault with intent to kill. We affirm.

The defendant raises three issues on appeal. First, defendant asserts that the trial justice erred in denying defendant's motion to pass the case because of prejudicial remarks made by the prosecutor during closing arguments. Second, defendant claims that the trial justice erred in denying defen-

dant's request for a jury instruction regarding self-defense, and third, defendant claims that the trial justice committed reversible error by admitting prejudicial hearsay testimony into evidence.

The first issue defendant raises concerns remarks made by the prosecutor during closing arguments. On direct examination Richard testified that he spoke with a person whom he believed to be defendant on the telephone the evening of the attack and that he told that person to stop calling Linda. Richard was not allowed to testify further concerning defendant's alleged response because he could not authenticate the voice on the phone as belonging to defendant, and the state presented no other testimony concerning these alleged statements. Despite this lack of evidence the prosecutor remarked on two occasions in her closing argument about alleged threats made by defendant to Richard during the phone call. Specifically the prosecutor stated:

"Let's look at what the State's witnesses testified to. Richard LeClair gave you his account of what happened that morning. He told you that he spoke on the phone that day to a man who he knew to be Michael Lane, and that Michael Lane said, 'I'm going to kill you.'

"Linda Coughlin and Richard LeClair told you about the harassing phone calls * * * and at some point Richard LeClair took that phone and told the defendant 'leave her alone, she doesn't want to be bothered.' What did the defendant say? He said, 'I'm going to kill you.' "

After the state closed, defense counsel made a motion to pass based on the prosecutor's improper reference to defendant's alleged threats. The trial justice excused the jury and conducted a brief hearing after which he denied the motion.

On appeal defendant asserts that the prosecutor's reference to the alleged threats was not supported by evidence admitted at trial and that the prosecutor's unsupported reference was so prejudicial that the trial justice erred in refusing to pass the case. The state concedes that the record does not support the prosecutor's

comments but contends that defendant is procedurally precluded from raising the issue on appeal because defendant failed to request a cautionary instruction from the trial justice. In the alternative the state asserts that the remarks amounted to harmless error.

The state concedes that there is nothing in the record to support the prosecutor's comments. Nevertheless, the state claims that the procedural remedy for improper comments, set forth in *State v. Plante*, 111 R.I. 386, 302 A.2d 804 (1973), is a cautionary instruction to the jury and that defendant is precluded from raising the issue on appeal because he did not request such instruction. In *Plante* we stated,

"when remarks are made by counsel in summation to a jury, which remarks adversary counsel considers improper, it is the duty of the adversary to request cautionary instructions from the trial justice." *Id.* at 390, 302 A.2d at 807 (citing *State v. Mancini*, 108 R.I. 261, 274 A.2d 742 (1971)).

In *Plante* we further noted, however, that this general rule is not inviolable and that a party will not be held to "strict compliance with the procedural process if it [is] clear from the record that strict compliance with such procedure would be unavailing." 111 R.I. at 391, 302 A.2d at 807.

■ In the instant case defense counsel made a motion to pass based on the prosecutor's improper remarks. The trial justice thereafter heard brief arguments on the motion from opposing counsel and denied the motion. A review of the colloquy between the trial justice and counsel indicates that any further motion by defendant would similarly have been denied and that a request for a cautionary jury instruction would have been unavailing. Accordingly defendant was not required to follow the procedure outlined in *Plante*, and defendant can appeal the propriety of the prosecutor's remarks.

■ "When a defendant claims that alleged prejudicial remarks form the basis for a mistrial, the trial justice must assess the prejudicial impact of such statements." *State v. Padula*, 551 A.2d 687, 691 (R.I.

1988); *State v. Brown*, 522 A.2d 208, 210 (R.I.1987). There is no bright-line test, however, to determine whether a prosecutorial comment is prejudicial as a matter of law, and a trial justice must evaluate the probable effect of the comment within the factual context of the evidence presented. *Padula*, 551 A.2d at 691; *Brown*, 522 A.2d at 210–11. After reviewing the comment within the factual context of the evidence, the trial justice must determine "whether the prosecutorial comment * * * so inflames the passions of the jury as to prevent their calm and dispassionate examination of the evidence." *Padula*, 551 A.2d at 691 (quoting *Brown*, 522 A.2d at 211). Finally, we note that a trial justice's decision to grant or to deny a motion to pass is discretionary and will not be disturbed on appeal unless clearly wrong. *Id.*

A review of the record in the instant case shows that the prosecutor's comments were improper but not prejudicial. The state presented more than ample evidence on which the jury could convict defendant. The state showed that defendant knew Richard had been sleeping in Linda's apartment and that defendant had called Linda the day before the attack and argued with her about Richard. At 2 o'clock the following morning defendant broke down the apartment door and assaulted Richard with a knife repeatedly saying "I'm going to kill you." A bloody fight ensued in which defendant chased Richard through the apartment and stabbed him in the stomach and head approximately ten times. Within the context of this evidence, the prosecutor's improper comment was not so inflammatory as to prevent the jury from impartially examining the facts of the case.

Moreover, the trial justice carefully instructed the jury about its obligation to review only facts introduced during the trial. Although the trial justice did not give a specific instruction concerning the prosecutor's inappropriate comments, we find the trial justice's general admonition to disregard statements made by counsel in closing remarks that were unsupported by the facts of the case to be sufficient. Accordingly the trial justice did not abuse his discretion in denying defendant's motion to pass.

The second issue defendant raises on appeal is that the trial justice erred in denying defendant's request for a specific jury instruction regarding self-defense. The defendant asserts that the trial justice inadequately instructed the jury concerning when during its deliberations the jury should determine whether the defense exists. The state responds that the trial justice gave an adequate instruction.

A review of the record shows that the trial justice clearly instructed the jury on self-defense and the state's burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. The trial justice did not instruct the jury using the exact words requested by defendant, but the rule in Rhode Island courts is that "[j]ury instructions need not be given in the precise form requested as long as they are clearly stated in substance and are adequately covered in the court's charge to the jury." *State v. Jette*, 569 A.2d 438, 442 (R.I.1990) (quoting *Vucci v. Meyers Brothers Parking System, Inc.*, 494 A.2d 530, 536 (R.I.1985)). In the instant case the trial justice gave a satisfactory instruction on self-defense. The defendant was entitled to nothing more, and his assertion that the trial judge erred in not repeating verbatim a carefully drafted instruction favoring defendant is without merit.

The final issue on appeal is whether the trial justice erred in permitting Officer Thomas Tillson of the Cranston police department to read into the record from a police report he had taken the day after the assault. On June 15, 1987, Officer Tillson accompanied Linda to her apartment to get some of her belongings, and shortly after the two arrived, defendant called Linda. Linda indicated to Officer Tillson that defendant was on the line but defendant hung up. Sometime later defendant called again and during this conversation Officer Tillson put his ear to the phone and overheard defendant make culpatory statements. Among the statements Officer Tillson overheard were that defendant would finish off Richard, that defendant had a

gun, and that defendant was on the run from the police. Officer Tillson subsequently memorialized the statements in a police report. Three years later, while testifying at defendant's trial, Officer Tillson could not remember the exact statements he overheard and requested to read the statements from his report. Defense counsel objected because the state presented no evidence that Officer Tillson could identify the voice as belonging to defendant. The court overruled defendant's objection, and Officer Tillson read the report into the record.

■■■ Rule 803(5) of the Rhode Island Rules of Evidence codifies the past-recollection-recorded exception to hearsay. Under Rule 803(5) a recorded recollection is admissible if the witness is unable to testify fully and accurately from memory alone and if the record was made when the matter was fresh in the witness's memory. Rule 803 Advisory Committee's Note. Rule 803(5) is not, however, a vehicle for the admission of otherwise inadmissible evidence contained in the memorialized writing, and a past recollection recorded is not admissible if the writing contains otherwise inadmissible statements. *See Mercurio v. Fascitelli,* 116 R.I. 237, 240, 354 A.2d 736, 739 (1976); Rule 803 Advisory Committee's Note. In the instant case Officer Tillson's report satisfies the foundation requirements of Rule 803(5), but statements attributed to defendant contained in the report are not admissible unless properly authenticated. The state introduced no evidence that Officer Tillson could identify the voice as belonging to defendant; therefore, the trial justice erred in allowing Officer Tillson to testify concerning statements allegedly made on the phone by defendant.

■■■ The admission of this testimony, however, was not prejudicial. As stated previously, the state presented more than sufficient evidence from which the jury could convict the defendant, and we find the trial justice's error in admitting Officer Tillson's testimony to be harmless beyond a reasonable doubt. *See State v. Fortier,* 427 A.2d 1317, 1325 (R.I.1981); *State v. Angell,* 122 R.I. 160, 168, 405 A.2d 10, 14–15 (1979).

Therefore, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed, and the papers of the case are remanded to Superior Court.