STATE

v.

George S. DAVIS.

No. 94–723–C.A.

Supreme Court of Rhode Island.

Feb. 1, 1996.

Aaron Weisman, Asst. Atty. General, for Plaintiff.

Janice Weisfeld, Paula Rosin, Barbara Hurst, Asst. Public Defenders, for Defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before the court on the defendant's appeal from a judgment of conviction after a jury trial entered in the Superior Court of Newport County on a single count of second-degree child molestation. The defendant's motion for a new trial was denied, and he was sentenced to twenty-five years imprisonment, ten years to serve, with fifteen years probation. On appeal the defendant seeks to have his conviction vacated and to have the case remanded to Superior Court for a new trial. We affirm the conviction. The facts of the case insofar as pertinent to this appeal are as follows.

On February 24, 1991, six-year-old Marisa [1] went with her parents and siblings to the Church of Jesus Christ of Latter Day Saints on Miantonomi Avenue in Middletown, Rhode Island, to attend Sunday services. After the services concluded, Marisa, and her brother and sister went upstairs to the church gymnasium. As they entered the gymnasium, Marisa and her siblings noticed defendant, George S. Davis (Davis or defendant), whom they had never seen before this encounter, giving the other children in the gym piggyback rides, walking on his hands, and performing tricks for his audience. Davis was the only adult in the gymnasium. It was after the other children had been given piggyback rides that Marisa was given her turn by defendant. During Marisa's piggyback ride, Davis placed his hand beneath her snug-fitting underwear and moved his hands and fingers around her buttocks. When Davis did this to her, Marisa told him to stop because her mother had taught her that nobody should be touching her "private part." The defendant did stop when she told him to. Upon returning home from church, Marisa made the following diary entry: "Feb 24, 1991 [T]oday is Sunday. We went to chirch. [A] giye lift me up and he poot his hands is my panees [sic]." Marisa had been keeping a diary for some time and was in the habit of writing daily entries. It was at a later point that very afternoon when Marisa showed her mother the diary entry she had made concerning her encounter with Davis. Upon reading her daughter's diary entry, Mrs. Brun [2] was "in shock" and informed the Bishop of her Church of what had happened. According to Mrs. Brun's testimony, on the following Sunday defendant appeared "before the congregation and he said that he came from a d[y]sfunctional family and that he had a problem, and he had talked to the Bishop about it, and the Bishop was going to help him receive counseling." On March 5, 1991, Mrs. Brun contacted the police, and on March 17, 1991, Davis was arrested without incident by Lieutenant Terry Hazel (Hazel) of the Middletown police department. While en route to the police station, Hazel informed defendant of his rights. At the station, Lieutenant Hazel informed defendant of the charges against him. Hazel then presented Davis with a rights form. Although Davis refused to give a written statement, Hazel testified that Davis was "very talkative." After giving an explanation to Davis of the

---

1. Marisa is a fictitious name.

2. Brun is a fictitious name.

charges against him, Hazel elicited the following information from defendant:

"[He] indicated that he had started to do it then stopped because he got scared. That he knew he had problems and needed help. That apparently the Bishop of the church where the incident happened at, if he is a Bishop or something, was attempting to get [him] some help. [Davis] told me he was taking medication to control his urges, and he asked if I knew any way in Rhode Island that he could get help."

The defendant raises two issues on appeal. He first contends that the trial justice erred in admitting the testimony of Marshall,[3] arguing that such testimony was not necessary to rebut defendant's claim of innocent touching, that it had no probative value, that it was highly prejudicial, and that this evidence was admitted for the improper purpose of showing that defendant has bad character and is the type of person likely to have committed this crime. The defendant next asserts that the trial justice erred in permitting the prosecution to introduce evidence of his statements to the church congregation when those statements did not constitute an admission and were not shown to be relevant to the charges on trial. We disagree with both contentions raised by defendant. The issues will be discussed below, and any additional facts as may be necessary will be provided.

## I

### Other–Crimes Evidence

Rule 404(b) of the Rhode Island Rules of Evidence limits the admission of "other crimes" evidence when such evidence is admitted "to prove the character of a person in order to show that the person acted in conformity therewith." If such evidence is used for other purposes, however, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable," then Rule 404(b) does not exclude the admission of such evidence if relevant. The rule specifically states:

"Rule 404. Character evidence not admissible to prove conduct; exceptions; other crimes.

* * *

(b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

In the instant case the trial justice permitted the state to introduce evidence that defendant had committed a sexual assault upon Marshall in 1985. Marshall was nine years old at the time of the assault and seventeen years of age at the time of trial in June of 1994. Marshall was the state's first witness, and he testified that he had first encountered defendant in Eugene, Oregon, at the Eugene Free Methodist Church. On March 2, 1985, Davis approached Marshall and a friend of Marshall while they were in the church sanctuary. Marshall had met Davis the previous Sunday at the Church and had observed him playing "with the kids" and doing "somersaults and tricks." On this particular Sunday, Davis engaged Marshall and his friend in some conversation regarding a fort the two boys were constructing in the sanctuary and then pointed to a stairway leading upstairs and asked the boys what was up there. The boys proceeded to give Davis "a little tour" of a Sunday School classroom that was located upstairs. According to Marshall's testimony, the boys "asked him a few things" and "[defendant] started showing [them] some exercises." While defendant was showing the two boys how to do some of these exercises themselves, such as bending over "like a bridge you do backwards," defendant put one hand on Marshall's buttocks and the other on the boy's penis. Later, after procuring a promise from the two to keep this a secret, defendant removed a pornographic magazine from a briefcase and showed it to the boys. Marshall testified that "while [de-

---

3. Marshall is a fictitious name.

fendant] was going through [the magazine], he would point to his penis and ask, 'Is yours like this? Is yours hard?'" The defendant then took Marshall's hand and placed it on his penis to show Marshall that he had an erection. The defendant told the boys not to tell anyone about this encounter, and the two boys left the classroom and went downstairs. On March 16, 1987, defendant entered guilty pleas upon a charge of the crimes of two counts of sexual abuse I in the Circuit Court of the State of Oregon for Lane County and was sentenced to imprisonment for a term not to exceed five years.

■ Davis contends that the trial justice erred in admitting evidence of his prior bad acts. Specifically, Davis argues that evidence of sexual misconduct involving himself and Marshall was not legally relevant under Rule 404(b), was highly prejudicial, and was not necessary to the state's case. We disagree. The trial justice permitted the prosecutor to introduce the evidence of defendant's prior bad acts for the limited purpose of establishing defendant's intent and to establish that defendant knew what he was doing when he placed his hand inside Marisa's underwear and moved his hands and fingers around her buttocks. This evidence was necessary to show that defendant's intent in touching the victim was for sexual gratification and to disprove defendant's claim that the improper touching was accidental or innocent.

■ In the case at bar defendant clearly made innocent intent an issue, and the state had the burden of proving beyond a reasonable doubt that the touching was done for the purpose of sexual gratification. *State v. Tobin*, 602 A.2d 528, 535 (R.I.1992). Therefore, the evidence that defendant had committed an earlier sexual assault upon a child in a similar context would tend to negate defendant's contention that his touching of Marisa was innocently incident to the giving of a piggyback ride. This evidence was properly admitted by the trial justice.

■ This court has never addressed the admissibility of other-crimes evidence for the purpose for which such evidence was admitted in this case, that is, to prove that a defendant's intent in touching the victim was for the purpose of sexual gratification and to disprove the defendant's claim that the improper touching was accidental. In the case at bar defendant vigorously contends that when he placed his hands inside Marisa's underwear and moved his hands and fingers around, that he did so for an innocent reason, that is, to facilitate the piggyback ride he was giving her, and that he did not do so for the criminal purpose of sexually gratifying himself. The defendant argues that the other-crimes evidence was not necessary because the victim's testimony that defendant "moved his hands and fingers around inside her underwear, if believed, established the element that the touching of her buttocks was for Mr. Davis' sexual arousal or gratification," but that argument was not the one defendant's counsel asserted at trial. At trial, defendant's counsel argued to the jury:

"[Other children] were right there [with the victim]. They had a piggyback ride. Nothing unusual happened. They saw Mr. Davis giving [Marisa] a piggyback ride. They saw nothing unusual. They heard nothing unusual. * * * It was a *piggyback* ride just like he gave the other children.

* * *

"This was a piggyback ride. Those of you who have ever given a piggyback ride or have seen anyone else giving a piggyback ride, and [Marisa] has testified her legs were around Mr. Davis, ladies and gentlemen, you have to support a small child. You have to put your hands on their buttocks in order to safeguard, in order to protect them from falling. It is necessary to put your hands on their buttocks. Granted you do not have to put your hands inside the panties. However, remember she was wearing a dress, * * * and when one is giving a piggyback ride one is also jostling. When you are giving a piggyback ride you do not stand still and just hold the child. You're moving. You're not going up and down, you're running, there is movement, and I submit to you that it's an ambiguous act. If you believe he put his hand under her panties, it's quite possible, quite probable you would do that yourself

if you were giving a small child a piggyback ride. The movement of the hands, yes, you almost have to. If you are giving a piggyback ride there is movement, there is jostling. [T]his was simply a piggyback ride and nothing more, nothing insidious about this[.]

\* \* \*

"I believe that the act itself, the act itself that [Marisa] told you about is an ambiguous act. It is equally, equally susceptible to being an innocent act as it is a guilty act. Now under the burden that you have to find whether or not there is proof beyond a reasonable doubt, I suggest to you that if it could equally be an innocent act of a person giving a piggyback ride to a small child that you would be violating your oath as jurors if you found him to be guilty."

It is abundantly clear that defendant made innocent intent an issue. We therefore conclude that the other-crimes evidence of the sexual assault upon Marshall nine years prior to the sexual assault in the instant case was relevant, reasonably necessary, and limited by the trial justice to the issue of intent and absence of mistake. It is only when evidence of prior criminal acts is both prejudicial and irrelevant that such evidence is inadmissible. *State v. Martinez,* 651 A.2d 1189, 1194 (R.I. 1994).

■ The defendant further advances the argument that even if the Oregon offense was admissible to rebut his claim of innocent touching and to establish that it was done for sexual gratification, the way in which this evidence was presented "overshadowed that of the named complainant" and, therefore, its admission constituted prejudicial error. This argument is entirely without merit. The record speaks for itself. Marshall did indeed testify prior to Marisa, and his testimony was approximately as long as the victim's. However, the prosecutor and the trial justice saw to it that Marshall's testimony did not overshadow Marisa's. Both the state and the trial justice went to great pains to impress upon the jury the limited purpose for which Marshall's testimony was being presented. In his opening statement, the prosecutor told the jury right from the start that Marshall's testimony

"[w]ill be offered not for those facts themselves. Mr. Davis isn't charged with those facts but you will be asked to use them later to ascertain the intent of Mr. Davis or the absence of mistake regarding the second incident."

Immediately after the prosecutor's opening statement, the trial justice instructed the jurors on the limited purpose of Marshall's testimony and informed them that

"the Prosecutor indicated it [*sic*] would bring a witness by the name of [Marshall], [M–A–R–S–H–A–L–L], and you heard the Prosecutor say the purpose was to show intent. In my instructions to you I will be instructing you on intent. I will give you a definition of intent and how intent is an element that has to be addressed by the jury.

"So, the state is bringing in a witness it claims who will testify to an incident not related at all to this case, not related at all to this case, and it cannot be used by you in establishing the guilt or innocence in this case, but is brought in for the limited purpose, ladies and gentlemen, the limited purpose is to support intent on behalf of the accused's intent. We will go into that later on but you are at this point in time to hear this testimony and understand it is brought in for the limited purpose of establishing intent on the part of the accused."

The jurors were informed once again by the prosecutor during his closing argument of the limited use they could make of Marshall's testimony, that is, for intent only. Finally, the jurors were once more instructed by the trial justice, in his closing instructions, about the purpose and the use they could make of Marshall's testimony. These closing instructions were as follows:

"You heard testimony, ladies and gentlemen, of a[ ] [Marshall] regarding an incident that took place in Oregon. Now, this testimony, ladies and gentlemen, has been received solely on the issue of what we call the Defendant's intent. The Defendant's design, knowledge or absence of mistake. It is for that limited purpose. The participation by the Defendant is not evidence of

guilt in this case but rather has been introduced as evidence to show intent, design and knowledge.

\* \* \*

"Again I repeat the pertinence of the testimony of [Marshall] was solely on the issue of the Defendant's intent and it's not evidence of guilt in this case."

It is clear from the record that the jury was repeatedly instructed by the trial justice, as well as by the prosecutor, on the permissible, limited use of Marshall's testimony. We are of the opinion that there is no basis for presuming that the jury disregarded these repeated instructions and used Marshall's testimony for the impermissible reason barred by Rule 404(b). Because the trial justice properly gave a limiting instruction to the jurors, the testimony regarding acts by defendant that were similar in nature to the acts charged in the instant case was admissible for the limited purpose of showing an absence of mistake or innocent touching. *See State v. Cardoza*, 649 A.2d 745, 748 (R.I. 1994).

The evidence of defendant's sexual assault upon Marshall was properly introduced to rebut defendant's claim of innocent touching and to establish that it was done for his sexual gratification. No error was committed by the admission of Marshall's testimony.

## II

### Statement by Party–Opponent

The defendant's second issue on appeal is that the trial justice erred by admitting into evidence the testimony of Marisa's mother concerning defendant's statement to the congregation. Specifically, Mrs. Brun testified that defendant spoke to the congregation the Sunday following the sexual assault upon her daughter and said that "he came from a d[y]sfunctional family and that he had a problem, and he had talked to the Bishop about it, and the Bishop was going to help him receive counseling." The defendant argues that the admission of this one statement constitutes reversible error, and he

specifically asserts that the statement is irrelevant and, therefore, not admissible. We disagree.

We are of the opinion that this statement was certainly not irrelevant to the case. On the contrary, this statement clearly had a tendency to make the determination concerning whether defendant had sexually assaulted Marisa the previous Sunday more probable than not. Because of its obvious relevance to this issue, it was certainly admissible as a statement by a party opponent under Rule 801(d)(2)(A) of the Rhode Island Rules of Evidence. This rule states in pertinent part:

"(d) *Statements Which Are Not Hearsay.* A statement is not hearsay if:

\* \* \*

(2) *Statement by Party–Opponent.* The statement is offered against a party and is (A) the party's own statement."

The statement's relevancy evolves from the fact that the Sunday after the incident occurred, and after Marisa's mother had informed the bishop about the incident, Davis stood before the congregation, which included the victim's mother, and told the entire congregation that "he came from a d[y]sfunctional family and that he had a problem, and he had talked to the Bishop about it, and the Bishop was going to help him receive counseling." Such a statement made to the entire congregation of a church in this context constituted an implicit admission of wrongdoing toward the victim in this case. It was an inculpatory statement.

As this court has recognized in numerous cases, questions of relevance and materiality are within the sound discretion of the trial justice. *See Thomas v. Amway Corp.*, 488 A.2d 716, 720 (R.I.1985); *Kelaghan v. Roberts*, 433 A.2d 226, 231 (R.I.1981); and *State v. Gelinas*, 417 A.2d 1381, 1386 (R.I.1980). The trial justice must clearly have abused his or her discretion before reversal is warranted. *Gelinas*, 417 A.2d at

1386. We find no such abuse of discretion on the part of the trial justice in the instant case.

For the foregoing reasons the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed. The papers in the case are remanded to the Superior Court.