**STATE**

v.

**Charles A. HOPKINS.**

**No. 96–212–C.A..**

Supreme Court of Rhode Island.

July 16, 1997.

Aaron L. Weisman, Jane M. McSoley, Asst. Attorneys General, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Asst. Public Defenders, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

FLANDERS, Justice.

The defendant, Charles A. Hopkins (Hopkins), urges us to overturn his conviction on five counts of sexually molesting his stepson when the boy was between nine and thirteen years old. To prove its case, the prosecution introduced not only the stepson's testimony but also evidence that Hopkins had allegedly sexually abused two other children when they were about the same age as the stepson: one James Snoke (Snoke), who was thirteen years old when Hopkins allegedly molested him, and one Charles Hopkins, Jr. (Hopkins, Jr.), Hopkins's biological son, who testified that Hopkins also sexually abused him when he was of similar age to the stepson.

Hopkins contends that this evidence of uncharged sexual misconduct should not have

been allowed into evidence and that its admission requires us to reverse his convictions and remand for a new trial. The trial justice disagreed, and so do we.

## I

### Admission of Uncharged Acts of Alleged Sexual Abuse Committed by Defendant against Other Children

■ Rule 404(b) of the Rhode Island Rules of Evidence provides, in pertinent part, that

> "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident."

Under Rule 404(b), if the testimony of Snoke and Hopkins, Jr., was admissible for any relevant "other purpose" besides proving "the character of [Hopkins] in order to show that [Hopkins] acted in conformity therewith," then the trial justice did not err in allowing it to be introduced into evidence, provided he gave an instruction to the jury concerning the limited purposes for which this evidence may be considered. *See State v. Lamphere*, 658 A.2d 900, 904 (R.I.1995).

Here the prosecution offered the uncharged sexual-misconduct evidence[1] to show (inter alia) that Hopkins's sexual molestation of his stepson was part of a common scheme or plan by Hopkins to molest young boys subject to his control and influence. All the acts of alleged molestation took place when the male victims were between the ages of seven or eight and thirteen years old and when they were either living with or working for Hopkins. Further they all involved similar incidents of alleged sexual touching, oral sex, and anal sex.

■ More specifically Snoke's testimony was admissible for the following purposes:

1. To show that Hopkins's sexual molestation of his stepson was part of a common scheme or plan of sexual misconduct that Hopkins carried out against boys of a similar age at a time when they too, like the stepson, were under Hopkins's thumb.[2] In other words, this 404(b) evidence was relevant to show that when given the opportunity, Hopkins had a motive, an intent, and a plan to abuse children of like age in a like manner to that in which he abused his stepson when they were under his control or influence. *Cf. State v. Lamoureux*, 623 A.2d 9, 13 (R.I.1993) (affirming admission of evidence of the defendant's sexual assault of another female victim to be introduced to show a common design or plan and to negate the defense of consent); *State v. Cardoza*, 465 A.2d 200, 203 (R.I. 1983) (the defendant's sexual abuse of a different stepdaughter five years before the charged offense properly allowed into evidence as "part of defendant's continuing behavioral pattern of sexually abusing his stepdaughters"); *State v. Pignolet*, 465 A.2d 176, 180 (R.I.1983) (affirming admission of evidence of the defendant's alleged sexual abuse of the complaining witness's sister because it "was part of an ongoing pattern of behavior that defendant exhibited toward both" victims).

2. To explain why the stepson belatedly decided to report Hopkins's alleged sexual abuse to the authorities after having failed to do so during or immediately after the period when he was being sexually abused by his stepfather.[3]

---

**1.** Hereinafter we shall refer to this type of uncharged sexual-misconduct evidence as "404(b) evidence" in reference to Rule 404(b) of the Rhode Island Rules of Evidence.

**2.** Snoke worked for Hopkins at his garage and was about thirteen years old when Hopkins allegedly abused him sexually. As was true for the stepson and Hopkins, Jr., some of these acts of sexual abuse occurred in Hopkins's home. Moreover, the type of sexual abuse alleged by Snoke and Hopkins, Jr., was generally similar (sexual touching, oral sex, and attempted anal sex) to that alleged by the stepson.

**3.** The mother of one of the stepson's close friends happened to be dating Snoke. Both the stepson and Snoke told her that they had been molested by Hopkins when they were young boys. These disclosures ultimately led to the stepson's talking to Snoke and then to the police, which in turn eventually led to Hopkins's indictment. Thus the trial justice found that Snoke's testimony was necessary to "show[] a tie-in," and he further

3. To rebut the defense's suggestion that the stepson's accusations against Hopkins were the product of their stormy relationship and were merely a manifestation of the stepson's resentment toward Hopkins in his attempts to impose some measure of discipline on the boy during his formative years.

Admittedly the alleged sexual abuse that formed the basis of Snoke's and Hopkins Jr.'s testimony happened approximately ten years before Hopkins allegedly began molesting his stepson and some fourteen to eighteen years before trial.[4] But the trial justice was entitled to conclude that the alleged remoteness of this 404(b) evidence was outweighed (1) by its potential probative value concerning the similar age and relationship of the boys to Hopkins when they were allegedly victimized by him and (2) by the other indicia that Hopkins's sexual forays involving young boys under his dominion constituted "a modus operandi that bore [his] signature." *Lamoureux*, 623 A.2d at 13.

█ Admission of this type of 404(b) evidence is a decision that is committed to the exercise of the trial court's sound discretion. *See State v. Brown*, 626 A.2d 228, 233 (R.I.1993). To be sure, as the generality of the alleged class of victims and the breadth of the purported plan, scheme, or modus operandi increases, the probative force of this evidence to establish the non-character-related purposes for which it is offered tends to diminish while its effectiveness in showing that the defendant has acted in conformity with his deviant sexual character tends to increase. But this arguable defect in the probative value of such evidence goes to its weight and to the need for limiting instructions, not to its admissibility under Rule 404(b) when, as here, such evidence is reasonably necessary for the prosecution to prove its case and is not merely cumulative.

█ In deciding whether to allow the jury to hear this type of 404(b) evidence, the trial justice has to balance relevance against remoteness and the potential for improper prejudicial impact. In *State v. Davis*, 670 A.2d 786 (R.I.1996), we upheld the admission of sexual-misconduct evidence given by a third-party witness based on events that occurred nine years before trial. And in *State v. Brigham*, 638 A.2d 1043 (R.I.1994), and *State v. Gomes*, 690 A.2d 310 (R.I.1997), we affirmed the admission of sexual-misconduct evidence regarding acts that had been committed outside the statute of limitations. Thus the victim in *Gomes* was allowed to testify regarding uncharged acts of sexual abuse committed upon her by the defendant dating back some eleven years before she testified at trial, even though the prosecution of these actions was no longer possible due to an expired statute of limitations. Accordingly, given the probative value of this evidence in establishing the other purposes for which it was admitted and given the prosecution's reasonable need for such evidence to prove its case against Hopkins beyond a reasonable doubt, we believe the trial justice did not abuse his discretion in concluding that the incidents of sexual misconduct described in the testimony of Snoke and Hopkins, Jr., were not too remote.

found that Hopkins, Jr.'s testimony was pertinent "to show the accused's motive, opportunity, intent, [and] plan." Moreover, this 404(b) evidence also tended to defuse the defense's suggestion that the stepson was consumed by revenge and was making up these allegations to get back at his hated stepfather. The presence of these "other purposes" for which the 404(b) evidence was introduced distinguishes this case from *State v. Quattrocchi*, 681 A.2d 879 (R.I.1996), where the other alleged misconduct was neither offered to explain why the complainant came forward to press charges against the defendant nor was it introduced to rebut a defense attack on the complainant's motives for accusing the defendant of sexual abuse. Moreover, unlike *Quattrocchi*, the noncomplainant child victims here were all sub-

ject to Hopkins's control because of his pre-existing father/son or employer/employee relationship with them.

4. Hopkins, Jr., was nine years older than his stepbrother. But he too testified that he was sexually abused by Hopkins from the time he was seven or eight years old until he was twelve. The type of molestation was the same as or very similar to that experienced by Snoke and by the stepson, taking place both in Hopkins's home and, like the situation with Snoke, in a storage area at Hopkins's gas station. *See State v. McVeigh*, 660 A.2d 269 (R.I.1995) (affirming admission of sexual-abuse testimony from a half-sister nine years younger than the complainant).

In *State v. Jalette*, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978), we recognized that "evidence that the accused committed nonremote similar sexual offenses with persons other than the victim may be admitted to prove the presence of the traditional exceptions to the general rule." Although "this type of evidence should be sparingly used by the prosecution and only when reasonably necessary," *id.,* the trial justice was entitled to conclude that the uncharged acts of sexual misconduct that were offered via Snoke and Hopkins, Jr., were "reasonably necessary" to prove the prosecution's case, which largely turned on a credibility battle between Hopkins and his stepson. Without Snoke's testimony to explain and corroborate why the stepson came forward when he did, without Hopkins, Jr.'s testimony to show how the accused's behavior toward his stepson was part of Hopkins's larger pattern of sexually abusing minors under his control, and without both of these witnesses to rebut the defense's suggestion of spite or revenge as the reason the stepson allegedly fabricated his sexual-abuse accusations against Hopkins, the jury would never have understood the complete context of the stepson's testimony.

■ Before trial Hopkins filed a motion in limine to exclude this 404(b) evidence. The trial justice, however, denied this request and allowed the 404(b) evidence to be admitted for purposes other than showing that Hopkins was simply acting in conformity with his allegedly deviant sexual character when he supposedly molested his stepson. However, after the state completed its opening statement and before the jury heard any witnesses, the trial justice instructed it as follows:

> "Ladies and gentlemen, the counsel for the State made reference that he intended to introduce testimony from individuals, you can describe it as other contacts, other individuals, people that may testify that the Defendant allegedly sexually molested them. We have a rule called 404(b). Evidence of other crimes, wrongs or acts is not admissible to prove the character of the person in order to show that the person acted in conformity with. That type of testimony, that portion of the rule would

not be admissible. I ruled on a pretrial hearing that the State could introduce other acts of other individuals, and according to this, the balance of this rule, it may, this type of testimony may however be admissible for other purposes such as proof of motive, opportunity, plan, intent, etc. I'm going to caution you along these lines again when that type of testimony appears, if in fact it does appear. It may be received by you for your consideration, these other acts with other individuals, on the issue of motive, opportunity, intent or plan. You may not use the evidence elicited as proof that the Defendant is a bad person and therefore probably committed the crime or crimes that the State alleges he in fact is being charged with."

On three other occasions the trial justice gave similar warnings to the jurors concerning the limited purposes for which this evidence could be considered. Given these circumstances, we conclude that the trial justice did not commit clear error in allowing this evidence to be admitted under Rule 404(b) for the above-specified purposes.

## II

### Other Alleged Errors

■ We also hold that the trial justice did not err when he denied Hopkins's motion for a new trial. The trial justice properly performed his function as a superjuror and evaluated the credibility of the witnesses and the other evidence that he heard. *See State v. Tempest,* 651 A.2d 1198, 1218 (R.I.1995) (discussing the new-trial standard). Although at one point, in describing his reasons for denying the motion, he mentioned that it appeared to him from the evidence presented that "this defendant had a propensity for this type of activity," his statement occurred in the context of his overall review of the witnesses' credibility. In finding that the stepson had told the truth and that reasonable minds could have interpreted the evidence differently, the trial justice was properly exercising his function as a superjuror. *See id.* Accordingly his one reference to Hopkins's seemingly having had a propensity for sexually abusive activity does not indicate to us

that he failed to perform his proper role in acting on the new-trial motion.[5]

■ Hopkins's other claims of error are also unpersuasive. He claims that the trial justice should have granted a mistrial when Snoke related how, when he was a patient at a facility "detoxing from heroin addiction," a counselor approached him and told him he "was holding something inside" and that this statement "woke me up." The trial justice immediately instructed the jurors to disregard this aspect of Snoke's testimony, ordered it to be stricken from the record, and as part of his later instructions to the jurors, he also told them to disregard any evidence that he had previously excluded from their consideration. Accordingly we do not believe that Snoke's fleeting reference to a statement allegedly made to him while he was in counseling for drug treatment amounted to the type of improper vouching for his testimony that required a mistrial to be declared. Although such a statement may have implied a belief by the counselor that Snoke had been sexually molested, the trial justice's immediate action in striking this testimony and in instructing the jury to disregard it were adequate to dissipate whatever harm may have been caused by the jury's having heard this statement.

■ The decision whether to grant a motion for a mistrial rests within the sound discretion of the trial justice and will not be disturbed on appeal unless it was clearly wrong. *State v. Lane*, 609 A.2d 633, 636 (R.I.1992). When, as here, a party moves to pass the case on the basis of a prejudicial nonresponsive answer to a question, the trial justice must assess the prejudicial impact of any answer that is given to determine whether the prejudice is so ineradicable or uncorrectable that the motion should be granted. *See State v. McDonald*, 602 A.2d 923, 927 (R.I.1992). On the other hand, if the prejudice can be cured, a timely instruction to the jury must be given. *Id.* We conclude that the trial justice correctly ruled that Snoke's unresponsive remark was not unduly prejudicial and, even if it had been, the trial justice's instructions to the jury cured any such taint that might have resulted.

■ Finally, the trial justice did not commit reversible error either in refusing to allow Hopkins to reopen the case after his final argument had concluded or in declining to issue a cautionary instruction after the trial justice had sustained an objection to defense counsel's statement in his closing argument that the stepson admitted that he had been drinking in a bar with Snoke in 1993. After the prosecutor objected on the grounds that there was no evidence that the stepson had been in a bar with Snoke, the trial justice granted the state's motion to strike and instructed the jury to disregard that portion of the lawyer's argument.

Because there was no factual foundation in the record for the assertion that the stepson had been in a bar with Snoke,[6] we are of the

---

5. However, it does indicate to us that even judges (let alone jurors) have great difficulty in limiting the use of 404(b) evidence to the non-character purposes for which it has been admitted. But this difficulty is inherent in the fine (some would say illusory) distinctions drawn by Rule 404(b) between evidence introduced to show conduct in conformity with character and evidence introduced for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge," and the like. For example, does a defendant accused of molesting his stepson have a motive to do so if he has a history of abusing other children who have lived with or worked for him? Or is evidence of his sexual abuse of other children in his control only pertinent to showing his deviant sexual propensities and his tendency to act in conformity therewith? It may be that the candid answer to these questions is that such evidence is relevant *both* to show character and "for other purposes," such

as motive. However, under Rule 404(b), it can only lawfully be used for the latter. Accordingly, as long as the trial justice properly instructed the jury on the limited purpose or purposes for which such evidence may be considered, it is generally admissible for such limited purposes, notwithstanding its undeniable relevance to proving that defendant acted in conformity with his prior bad acts. Also, the mere fact that the judge concluded from the evidence that Hopkins has a propensity for sexually abusing young boys does not mean that he then concluded that therefore defendant must have necessarily acted in conformity therewith on this occasion.

6. This statement of defense counsel was based upon the stepson's interview with the Department of Children, Youth, and Families. In that interview, he stated that he had some beer with Snoke, but there was no reference to their having been drinking in a "bar" at that time.

opinion that the trial justice properly sustained the objection to this argument and granted the motion to strike while instructing the jury to disregard that portion of the argument. Accordingly we conclude that Hopkins has not shown any abuse of discretion concerning the trial justice's ruling on this issue. Nor was it prejudicial error for the trial justice to refuse Hopkins's request to reopen his defense case so that the issue concerning the bar could be further addressed. This was a minor point at best, and it caused no undue prejudice to Hopkins's defense.

### Conclusion

For these reasons we deny and dismiss Hopkins's appeal and affirm his convictions.

GOLDBERG, J., did not participate.

WEISBERGER, Chief Justice, dissenting.

In the case at bar the state, over the objection of the defendant, introduced testimony of two witnesses who had allegedly been sexually molested by the defendant, Charles Hopkins, many years prior to the date of trial and many years prior to the acts charged in this indictment. James Snoke (Snoke) testified that approximately seventeen years prior to the trial of this case he was sexually molested by the defendant while he was employed at a gas station owned by the defendant. At that time Snoke was thirteen years of age.

Another witness presented by the state was Charles Hopkins, Jr., (Charles, Jr.) the biological son of defendant. He is almost nine years older than defendant's stepson, whom we shall call Mark, the alleged victim in this case. The alleged sexual molestation of Charles, Jr., took place when he was approximately seven or eight years of age. The sexual molestation ceased when Charles, Jr. reached the age of twelve years.

Neither Charles, Jr., nor Snoke lived with Mark at or near the time when the sexual assaults were alleged to have occurred. Snoke never lived in the same house as Mark. Charles, Jr. lived in the same house as Mark only when Mark was less than three years old. Nor were either associated with

defendant at or near the times of the alleged assaults upon Mark, which took place between the times when Mark was nine years of age until he reached age thirteen. These episodes were separated by many years in respect to both Snoke and Charles, Jr.

As we pointed out in *State v. Quattrocchi*, 681 A.2d 879 (R.I.1996), the admission of evidence concerning other crimes or bad acts is governed by Rule 404(b) of the Rhode Island Rules of Evidence.

"*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable." Rule 404(b).

We pointed out in *Quattrocchi* that our seminal case in respect to the admission of such evidence was *State v. Jalette*, 119 R.I. 614, 382 A.2d 526 (1978). In that case we were persuaded by the principles set forth in *People v. Kelley*, 66 Cal.2d 232, 424 P.2d 947, 57 Cal.Rptr. 363 (1967), to admit testimony concerning uncharged acts of sexual molestation committed against the victim herself.

Our holding in *Jalette* was summarized as follows:

"We are extremely conscious that the indiscriminate use of 'other crimes' evidence poses a substantial risk to an accused's right to a fair trial. We adopt the holding in *Kelley* with the admonition that this type of evidence should be sparingly used by the prosecution and only when reasonably necessary. *Whitty v. State,* [34 Wis.2d 278, 297, 149 N.W.2d 557, 565 (1967)]. The trial court should exclude such evidence if it believes it is purely cumulative and not essential to the prosecution's case. Evidence of other crimes is admissible only when it tends to show one of the exceptions to which we have previously alluded and only when that exception is relevant to proving the charge lodged against the defendant. *State v. Curry,* 43

190

Ohio St.2d 66, 330 N.E.2d 720 (1975)." *Jalette,* 119 R.I. at 627, 382 A.2d at 533.

We went on in our later case *State v. Pignolet,* 465 A.2d 176 (R.I.1983), to review the *Jalette* doctrine, and we reaffirmed the principles enunciated in that case. However, we went beyond the doctrine of *Jalette* and approved the admission of evidence of acts of sexual abuse committed against the younger sister of the complaining witness who was also the defendant's stepdaughter. We allowed the admission of this testimony because it tended to show a lewd disposition on the part of the defendant toward his two stepdaughters. In doing so, we emphasized that both children lived in the same house with the defendant and that all but one of the sexual acts took place during the same interval of time. *Pignolet,* 465 A.2d at 181–82. We further noted in *State v. Quattrocchi, supra,* that Justice Kelleher, the author of *State v. Jalette,* vigorously dissented from the majority opinion in *Pignolet,* observing that the rationale that led to *Jalette* had "been laid to its eternal rest without benefit of so much as a eulogy." 465 A.2d at 184. We stated in *Quattrocchi,* and I repeat now, that *Pignolet* expanded the *Jalette* doctrine in so far as it related to two stepdaughters in the same household and went beyond uncharged acts committed against the victim herself. We held in *Quattrocchi* that:

"*Pignolet* represented the extreme beyond which we are unwilling to expand the other-crimes (or bad-acts) exception because of its overwhelming prejudice to defendant and its tendency to be viewed by the trier of fact as evidence that defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offense with which he is charged." *Quattrocchi,* 681 A.2d at 886.

I am of the opinion that the *Jalette—Pignolet* doctrine does not support the admissibility of the testimony of Snoke or Charles, Jr. Neither of these men lived in the same household as the alleged victim in this

case. Both men were allegedly molested at times and places extremely remote from the events involving the alleged victim in this case. Likewise, neither of these men presented testimony that would fit within any of the traditional exceptions set forth in Rule 404(b). There is no question of accident or mistake as was set forth in *State v. Davis,* 670 A.2d 786, 790 (R.I.1996), allowing the admission of 404(b) evidence to show intent. There was also no classic *Jalette* exception as set forth in *State v. Gomes,* 690 A.2d 310, 316 (R.I.1997). In *Gomes* we reaffirmed that evidence of other crimes or bad acts is usually considered so prejudicial that it is per se inadmissible regardless of any relevancy that it may have to show the propensity of any defendant to have committed the charged crime. *Id.* In *Gomes* we reaffirmed *Jalette* and approved the admission of uncharged acts committed against the victim herself. *Id.* at 316–17. We went on to observe that nothing in *Quattrocchi* casts doubt upon the use of other-acts testimony to show lewd disposition toward the victim herself. *Id.* at 317.

I agree that the distinctions which we have made in *Jalette, Pignolet,* and *Gomes* are in application subtle and sometimes elusive. Nevertheless, we have steadfastly maintained that other acts of sexual molestation against third parties are inadmissible for the sole purpose of showing propensity. Unless it qualifies under a traditional exception set forth in Rule 404(b), or is admissible pursuant to either the *Jalette* or *Pignolet* formulations, testimony regarding other acts of sexual misconduct is inadmissible under the clear command of Rule 404 and our case law.

In the case at bar I am constrained to conclude that the testimony of Snoke and Charles, Jr., did not qualify for any Rule 404(b) exception. The state's argument relating to motive, opportunity, common scheme, or plan is unpersuasive in this context. In sum the only purpose of this testimony was to show propensity.[7] This result

7. In *State v. Kirsch,* 139 N.H. 647, 662 A.2d 937 (1995), the Supreme Court of New Hampshire analyzed similar circumstances in the following way:

"Whether nominally labeled motive, intent or common plan, the ostensible purpose for which the prosecution sought to admit evidence of a multitude of other uncharged sexual assaults was to show the defendant's predilec-

Rule 404(b) will not permit by its express terms. It can scarcely be contended that there was any common scheme or plan relating to this victim, Snoke, and Charles, Jr. These incidents occurred years apart and in entirely separate contexts. I fear that the opinion of the majority would cause the exceptions set forth in Rule 404(b) and *Jalette* and *Pignolet* to swallow the rule and render it a nullity. For these reasons I respectfully dissent.

tion for molesting young females over whom he was able to gain control through engendering trust. At most, this is evidence of the defendant's disposition to commit the offenses with which he was charged, impermissible under Rule 404(b). Because it was not relevant for a permissible purpose, the evidence should have been excluded, and its introduction was an abuse of discretion." *Id.* 662 A.2d at 943. *Accord State v. Winter*, 162 Vt. 388, 648 A.2d 624, 628–31 (1994).