June 6, 2017

**Supreme Court**

No. 2014-358-C.A.

(P1/13-56A)

State                              :

v.                              :

Helberth Perez.                    :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State  :

v.  :

Helberth Perez.  :


Present:  Suttell, C.J., Goldberg, Robinson, Flaherty, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The defendant, Helberth Perez, was indicted and convicted by a jury of six counts of first-degree sexual assault and three counts of second-degree sexual assault, relating to conduct involving his daughter.[1]  He now appeals from the Superior Court judgment of conviction.  For the reasons set forth in this opinion, we vacate count 5 of the judgment of conviction and affirm the judgment of the Superior Court in all other respects.

---

[1] The indictment charged defendant with:  count 1, engaging in sexual penetration, fellatio, in violation of G.L. 1956 § 11-37-2, first-degree sexual assault; count 2, engaging in sexual contact, penis to buttocks contact, in violation of § 11-37-4, second-degree sexual assault; count 3, engaging in sexual penetration, fellatio, in violation of § 11-37-2, first-degree sexual assault; count 4, engaging in sexual contact, hand to vagina contact, in violation of § 11-37-4, second-degree sexual assault; count 5, engaging in sexual contact, hand to vagina contact, in violation of § 11-37-4, second-degree sexual assault; count 6, engaging in "digital/vaginal penetration" in violation of § 11-37-2, first-degree sexual assault; count 7, engaging in sexual penetration, fellatio, in violation of § 11-37-2, first-degree sexual assault; count 8, engaging in "digital/vaginal penetration" in violation of § 11-37-2, first-degree sexual assault; and count 9, engaging in sexual penetration, fellatio, in violation of § 11-37-2, first-degree sexual assault.

# I

## Facts and Travel

At a jury trial held in July 2014, the then-sixteen-year-old complainant, whom we shall refer to as Maya,[2] testified that defendant, who is her biological father, had repeatedly molested her beginning shortly after she turned fourteen years old.

Maya testified that, at the end of her fifth-grade year, her parents separated and she moved in with defendant in the middle of her seventh-grade year, a couple of months before her fourteenth birthday. She recalled that, "when [she] [was] younger, [defendant] * * * hit [her] a lot," as a form of discipline, with his belt on her backside; but once she became older, defendant would "hit [her] * * * once in a while for little things." Maya further testified that she moved in with defendant "[b]ecause he promised [her] things." In particular, defendant promised Maya something that was really important to her: "gett[ing] [the] family back together." The defendant also promised Maya "[c]lothes, food, [and] anything [that she] wanted" for her to live with him because, at the time, Maya's mother "didn't have a lot of money."

Maya testified that the abuse began shortly after her fourteenth birthday, in January 2012—approximately three to four months after moving in with defendant. According to Maya, one morning she had an appointment with an orthodontist. On that morning, she and defendant were watching the History Channel in defendant's room, as was customary for them. The defendant watched from the bed while Maya sat on the floor. Maya explained that she did not like visiting the orthodontist because "[t]hey would put needles in [her] mouth, and [she] didn't like it." According to Maya's testimony, defendant stated that they did not have to go to the

---

[2] The name of the complainant and all other names used in this opinion are pseudonyms, except for defendant's.

appointment, and he asked her, "Why don't you sit on the bed?" Maya testified that she complied.

Maya continued to testify that she was lying on her side, "facing the TV," and that defendant "was at the other end where the pillows were * * * [and] where the bed frame was." The defendant then "got * * * really, really close * * * where he was touching * * * [her] butt." He then told her to remove her pants. At this moment, Maya "froze," and defendant removed her pants. Maya testified that defendant then exposed his erect penis and "told [her] to suck it." Maya said that defendant "put [his penis] in [her] mouth and made [her] suck it for * * * five minutes." The defendant then told her to not "tell anyone, or [he]'ll go to jail or get deported."

Maya testified that, on a separate but similar occasion, approximately "a week or two" later, while in defendant's bedroom, he "asked if [she] loved him." She answered affirmatively. The defendant then said, "I want you to suck it." According to Maya, she "froze," and defendant "put [his penis] in [her] face and * * * practically told [her] to suck it." Maya further testified that defendant "made [her] suck [his penis] for like five to ten minutes, and then he left." Before he left, defendant again repeated to her to "[not] tell anyone, or [he]'ll get deported or go to jail."

Approximately three days later, while taking a shower, Maya "heard the door creak;" and, suddenly, defendant "opened the curtain and stood there" as she "clean[ed] [her]self." Maya testified that defendant "stood there for, like, a minute or two and said, 'You're not cleaning yourself right.'" The defendant then "took the soap, * * * put it in his and [her] hand, and he forced [her] legs open and started rubbing * * * [her] private area," telling her, "[t]his is how you wash it." He then took his hand away and told Maya to continue "rub[bing] [it] [her]self." Maya said that she had to yell at defendant "to get out" "four times" before he left the bathroom.

The following spring or summer, Maya came home from a Saturday morning class and decided not to attend defendant's significant other's birthday party. Maya testified that she fell asleep alone in the house. Upon awakening, she "went to * * * get [her] [video] game and play it and [discovered] it was missing." Subsequently, while riding in a car with defendant, he told her that, "[i]f [she] want[ed] to get [her] [video] game back, [she] [would] have to do something." According to Maya, when they arrived home and were inside the apartment, defendant "put his hands in [her] * * * back pockets, and * * * dragged [her] into [his] [bed]room." Maya testified that defendant undressed her, "took off his pants, and he told [her] to suck [his penis,]" then he "put [her] on the bed and * * * he put his fingers [in her vagina]." The defendant then "told [her] to suck it again" and proceeded to put his penis in her mouth and, after forcing oral sex, ejaculated in her mouth, removed his penis from her mouth, and "told [her] to swallow it."

After graduating from the eighth grade, Maya visited her mother for "[t]wo to three weeks" because she "was upset with [defendant] [after] he hit [her]." Maya testified that, in that period of time, she had a "fine" experience with "really funny moments" but, after a while, she began "feeling bad" because her mother did not "have a lot of money, and she ha[d] so many kids to take care of * * * [in addition to being] pregnant" at the time. Specifically, Maya testified that she felt "bad that [she] [was] wasting and using so much space." Maya continued to testify that she got "really, really close to telling [her] mom" about defendant's abuse but did not because her mother "was pregnant" and Maya "didn't want her to worry." As a result, Maya returned to defendant's home.

Upon arriving at defendant's home, according to Maya, he told her that he missed her, took her hand, and "brought [her] to his room." In the bedroom, defendant, once again, forced Maya to perform fellatio. Maya testified that, in addition to putting "his fingers in [her]

- 4 -

[vagina]," defendant ejaculated in her mouth and "made her swallow it." Once defendant finished, he admonished Maya by stating: "Don't tell anyone. I'll get in trouble, go to jail or get deported."

Maya testified that, a "couple days" later, after being repeatedly questioned by Hillary, her older sister, she broke down crying and told Hillary and another sister what defendant had been doing.[3]

Hillary testified that, in July 2012, on an occasion when she was residing with defendant and Maya, she noticed that Maya "was acting very rebellious towards [defendant]." According to Hillary, one day Maya refused to assist her sisters after defendant had asked them to clean the house. Hillary testified that Maya was "acting so rebellious" because defendant had asked her to clean the house. She also explained that Maya nodded her head affirmatively when she asked if defendant had "done anything to" her. Hillary continued to testify that Maya "didn't want to tell [them] what [defendant] was doing," but that she "assumed it was something sexual." According to Hillary's testimony, she made this assumption because defendant had also abused her when she was twelve years old—approximately eight years before the trial.

At this point, the trial justice interrupted the examination and provided a limiting instruction to the jury. The trial justice instructed the jury that the "evidence that * * * [d]efendant allegedly committed a sexual act or another act with the witness, [Hillary], which alleged act [was] not charged in this case, [was] admissible for a limited purpose." The trial justice then stated that the evidence was "not admissible to show that * * * [d]efendant had a propensity to commit the acts charged in this case;" the trial justice indicated that the evidence

---

[3] At this point in the examination, defendant objected to the line of questioning. At sidebar, the trial justice indicated that she was "prepared to make a ruling on the [state's] [pending Rule] 404(b)" motion in limine. The trial justice found that Hillary's testimony, as presented at her voir dire hearing, would be admissible because the proper foundation had been laid.

was admissible, however, "to show motive, opportunity, intent, preparation, plan, and sense of mistake or accident. In other words, it [was] admissible to show a disposition, perhaps, but not as evidence that [defendant] had a propensity to commit the act alleged." The trial justice then allowed Hillary to continue testifying. The defendant made no objection to this limiting instruction.

According to Hillary's testimony, on "one summer night," she was not "feeling very well so [she] crawled into" defendant's bed. Hillary testified that defendant was in the bed with his then-wife, Courtney.[4] After she fell asleep, Hillary testified, "in the middle of the night," she was awakened by her father "touch[ing] [her] * * * breast[s] and * * * vagina." She testified that, although she was clothed, defendant reached "under" her garments to touch her. After a "couple of minutes" of defendant touching her, Hillary testified that she left defendant's bedroom.

Hillary further testified that, "a couple days later," defendant groped her again. Hillary said that, after she fell asleep while watching television in defendant's bedroom, "the same thing happened."

Hillary testified that, after these two occurrences, she asked Courtney if defendant "touch[ed] [her] at night[.]" Hillary recounted that Courtney answered "yes," and asked her the reason for her question; Hillary responded by telling her of the two incidents in which defendant touched her. Hillary further testified that Courtney summoned defendant into the living room to discuss these incidents. According to Hillary's testimony, "[defendant] said that it was an accident and that he was sleeping[;] [that] [he] [did] [not] remember any of it."

---

[4] Courtney is Maya's mother.

On the witness stand, Hillary recalled that, "within a week or week and a half" after discovering what defendant had allegedly done to Maya, she informed Courtney. Her testimony elucidated that Hillary, along with Maya and their sister, met with Courtney at the Providence Place Mall to inform Courtney of defendant's sexual abuse of Maya. Hillary indicated that she and her sister "were the ones talking to [Courtney]" at the mall; Maya did not share any information with her mother at that moment.

Afterwards, Courtney took Maya to the Central Falls police station. There, Maya gave a statement to police concerning defendant's conduct. Thereafter, Maya was taken to a hospital and examined by a doctor. In her testimony, Maya indicated that she had not informed anyone of defendant's abuse because she was apprehensive that they would tell defendant and that "[h]e would hurt" her as a result.

At the close of the state's case, defendant moved for a judgment of acquittal on all counts, which the trial justice denied. On July 17, 2014, the jury found defendant guilty of six counts of first-degree sexual assault and three counts of second-degree sexual assault. The defendant was sentenced on September 29, 2014, to a fifty-year sentence, twenty-eight years to serve at the Adult Correctional Institutions, and twenty-two years suspended with probation upon release.[5] The defendant timely appealed.

---

[5] The defendant was sentenced to fifty years at the Adult Correctional Institutions (ACI), twenty-eight to serve, the balance suspended with probation, for counts 1, 3, 6, 7, 8, and 9, of the indictment. On counts 2, 4, and 5, he was sentenced to fifteen years at the ACI, ten to serve. All counts were to run concurrent with each other. The defendant was also ordered to complete a sex offender counseling program and to have no contact with Maya.

## II

## Standard of Review

It is well established that decisions concerning the admissibility of evidence are "within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent." State v. Mohapatra, 880 A.2d 802, 805 (R.I. 2005) (quoting State v. Grayhurst, 852 A.2d 491, 504 (R.I. 2004)). "The trial justice will not have abused his or her discretion as long as some grounds supporting his or her decision appear in the record." State v. Evans, 742 A.2d 715, 719 (R.I. 1999).

## III

## Discussion

## A

## Rule 404(b) Evidence

The preliminary inquiry posed by defendant is whether certain testimony at trial should have been precluded under Rule 404(b) of the Rhode Island Rules of Evidence. In particular, defendant contends that Hillary's testimony should have been excluded "because it was too remote and not reasonably necessary * * * to prove the elements of the charged crim[es] * * *."

Prior to the commencement of trial, Hillary was examined in a voir dire hearing concerning the state's motion in limine seeking to introduce certain uncharged acts of defendant. The trial justice ruled, over defendant's objection, that the testimony of Hillary, alleging sexual acts by defendant against her approximately eight years before trial, would be admissible, subject to a proper foundation being established.

In ruling that Hillary's testimony would not be precluded, the trial justice noted that Hillary and Maya "are only * * * a couple of years apart in age"; that Hillary's alleged abuse

"would have happened eight years [before trial] when she was 12," while "[t]he conduct alleged in this case would have occurred about two years [before trial] when [Maya] was 14"; that they "are both biological daughters of * * * defendant"; "[t]hey were both allegedly in the situation where * * * defendant had access to them"; that, although Hillary's allegations indicate that Courtney was also in bed with defendant, Hillary was positioned in a manner where she was next to defendant and not Courtney; that "the allegations involve[d] alleged offenses [that] occurre[d] at * * * defendant's home"; and that "[t]he relationships [we]re identical" and "[t]he age[s] [of Maya and Hillary were] sufficiently similar."

At trial, during Hillary's direct examination, the trial justice interrupted the state's presentation and provided a limiting instruction to the jury. As noted, the trial justice explained to the jury that the testimony they were about to hear from Hillary was not admissible to show that defendant "had a propensity to commit the acts charged in this case." Rather, the trial justice continued, the testimony was "admissible to show [that defendant had a] motive, opportunity, intent, preparation, plan, and sense of mistake or accident" to carry out the acts alleged by Maya.

In her instructions to the jury after the close of evidence, the trial justice reminded the jury that she had previously instructed them concerning the uncharged acts of sexual assault alleged by Hillary in her testimony. She then explained that, "[t]o the extent that the evidence in this case included testimony about alleged incidents that were not charged by the [s]tate * * * that testimony was admitted for a limited purpose, such as to prove motive or to prove opportunity[ ] to commit the charged offenses or as alleged proof of * * * [d]efendant's sexual intent or disposition. [The evidence] was not admitted to prove the character of * * * [d]efendant in order to show that he acted in conformity with such uncharged alleged conduct."

Rule 404(b) provides that:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that [the] defendant feared imminent bodily harm and that the fear was reasonable."

We have long recognized that, "[i]n molestation or sexual assault cases, evidence of a defendant's prior sexual misconduct cannot be admitted to prove that '[the] defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offenses with which he is charged.'" Mohapatra, 880 A.2d at 806 (quoting State v. Quattrocchi, 681 A.2d 879, 886 (R.I. 1996)). Moreover, "when a person other than the complainant testifies about prior sexual misconduct, such alleged misconduct must be 'nonremote' and 'similar' to the charged offense." State v. Merida, 960 A.2d 228, 237 (R.I. 2008) (quoting State v. Jalette, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978)). Offenses are recognized as "'nonremote' and 'similar' when they are 'closely related in time, place, age, family relationships of the victims, and the form of the sexual acts.'" Mohapatra, 880 A.2d at 806 (quoting State v. Brigham, 638 A.2d 1043, 1045 (R.I. 1994)). "Furthermore, the evidence is admissible 'only when that exception is relevant to proving the charge lodged against the defendant,' and 'only when reasonably necessary.'" Id. (quoting Jalette, 119 R.I. at 627, 382 A.2d at 533).

"In deciding whether to allow the jury to hear * * * [Rule] 404(b) evidence, the trial justice has to balance relevance against remoteness and the potential for improper prejudicial impact." State v. Hopkins, 698 A.2d 183, 186 (R.I. 1997). "When evidence is admitted pursuant to an exception to Rule 404(b), the trial justice must instruct the jury on the limited purpose for which the evidence may be considered." Merida, 960 A.2d at 237-38. Generally, a trial justice's

preliminary determination on a motion in limine "need not be taken as a final determination of the admissibility of the evidence referred to in the motion." Id. at 238 (quoting State v. Torres, 787 A.2d 1214, 1220 (R.I. 2002)).

In Hopkins, 698 A.2d at 184, the defendant appealed his convictions of sexual assault on his stepson, who was between nine and thirteen years old when the charged acts transpired. To prove its case, the state, over objection, introduced evidence that the defendant had allegedly sexually abused his biological son and another boy—both of whom were of similar age as the complaining witness at the time of the abuse—at a time that he had control over the victims.[6] Id. at 184, 185. In addition, the Court noted that the acts "involved similar incidents of alleged sexual touching, oral sex, and anal sex." Id. at 185. In affirming the convictions, the Court held that the uncharged acts were admissible to show that the defendant's charged acts were part of a common scheme or plan to molest young boys subject to his control and influence.[7] Id.

Furthermore, the Hopkins Court also noted that, although the uncharged acts occurred approximately ten years before the defendant began sexually assaulting the complaining witness and "fourteen to eighteen years before trial," the trial justice "was entitled to conclude that the alleged remoteness of this * * * evidence was outweighed (1) by its potential probative value concerning the similar age and relationship of the boys * * * when they were allegedly victimized by [the defendant] and (2) by the other indicia that [the defendant]'s sexual forays involving young boys under his dominion constituted 'a modus operandi that bore [his]

---

[6] The Court in State v. Hopkins, 698 A.2d 183, 185 (R.I. 1997), noted that "[a]ll the acts of alleged molestation took place when the male victims were between * * * seven or eight and thirteen years old and when they were either living with or working for [the defendant]."

[7] The Court indicated that, at the time of the abuse, the uncharged acts occurred either at the defendant's place of work or his home, and that the abuse alleged "was generally similar (sexual touching, oral sex, and attempted anal sex) to that alleged by the [complaining witness]." Hopkins, 698 A.2d at 185 n.2.

signature.'" Hopkins, 698 A.2d at 186 (quoting State v. Lamoureux, 623 A.2d 9, 13 (R.I. 1993)). Finally, the Court provided guidance on the admission of Rule 404(b) evidence, by pronouncing that, similar to a sliding scale, "as the generality of the alleged class of victims and the breadth of the purported plan, scheme, or modus operandi increases, the probative force of this evidence to establish the non-character-related purposes for which it is offered tends to diminish while its effectiveness in showing that the defendant has acted in conformity with his deviant sexual character tends to increase." Hopkins, 698 A.2d at 186. This defect in the probative value, the Court made clear, does not affect the admissibility of the evidence, when "such evidence is reasonably necessary for the prosecution to prove its case and is not merely cumulative"; the defect, rather, "goes to its weight and to the need for limiting instructions." Id.

### 1. Similar Sexual Acts

The defendant argues first that the incidents involving Hillary are not sufficiently similar to Maya's allegations. In particular, defendant asserts that "the two witnesses described very different conduct which was carried out in two completely different ways[:] [Hillary] describe[d] accidental touching when she [was] in bed with [defendant]" while he was asleep. Maya, on the other hand, "describe[d] a series of touching, fellatio, and digital penetration of her vagina * * * [in] a scenario where * * * [defendant] would pressure [Maya] into not telling anyone." In addition, defendant contends that the allegations are not similar because, in Maya's testimony, defendant was alone with her at the time the alleged acts transpired and used his "power and ability to provide things as a way to pressure [Maya] into acquiescing." In fact, defendant avers, the "acts were not at all similar aside from the fact that they were both touching."

As previously noted, the admissibility of evidence is within the trial justice's sound discretion. See Mohapatra, 880 A.2d at 805. Moreover, "prior sexual misconduct with someone other than the complainant" is recognized as "nonremote" and "similar," and therefore admissible under Rule 404(b) when it is "closely related in time, place, age, family relationships of the victims, and the form of the sexual acts." Mohapatra, 880 A.2d at 806 (quoting Brigham, 638 A.2d at 1045). In addition, "the evidence is admissible 'only when that exception [of Rule 404(b)] is relevant to proving the charge lodged against the defendant,' and 'only when reasonably necessary.'" Mohapatra, 880 A.2d at 806 (quoting Jalette, 119 R.I. at 627, 382 A.2d at 533).

Here, before admitting the evidence, the trial justice indicated how the alleged uncharged acts to which Hillary testified were similar to the incidents under indictment. In this case, the trial justice noted that Hillary and Maya were "both biological daughters of" defendant and only "a couple of years apart in age" when the alleged acts occurred—Hillary being twelve and Maya fourteen at the time—thus, the trial justice concluded, the ages were "sufficiently similar" for an appropriate comparison and analysis. In addition, the trial justice noted that Hillary's allegations and the charged offenses all occurred in defendant's home "where * * * defendant had access to [his daughters]." The trial justice also indicated that, although Hillary's testimony alleged that Courtney was also in bed with defendant when the acts occurred, this fact was tempered because Hillary was positioned next to defendant, in a manner whereby defendant had direct control over her. After reviewing the record, we are satisfied that the trial justice articulated sufficient reasons to support her finding that Hillary's allegations were sufficiently similar to the charged acts, and she appropriately exercised her discretion in this regard. Therefore, we have no cause to interfere with her decision on this basis.

## 2.  Relevance to Charges

The defendant claims next that Hillary's testimony should have been precluded at trial because the "alleged prior sexual acts had insufficient relevance to this case" since that testimony described "an accidental touching" and not the "calculated and well-planned assault" for which defendant was indicted.  Thus, defendant posits, the testimony does not describe a "common scheme or plan" on defendant's part.

Rule 401 of the Rhode Island Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  In addition, Rule 402 of the Rhode Island Rules of Evidence indicates that "[a]ll relevant evidence is admissible."

In the case before us, Hillary's testimony concerning other alleged acts of sexual abuse easily clears the relevancy bar, which, to be sure, is quite low. See State v. Rodriguez, 996 A.2d 145, 151 (R.I. 2010) ("low relevancy threshold reflects the 'evidentiary maxim, [a] brick is not a wall'") (quoting Advisory Committee's Note to Rule 401).  As this Court said in State v. Pignolet, 465 A.2d 176, 182 (R.I. 1983), with respect to the admission of evidence concerning uncharged sexual acts admitted by the defendant against his stepdaughter:  "We find that this evidence was neither irrelevant nor remote.  Both later incidents, coupled with [the] defendant's first assault attempt, are relevant, material, and highly probative of [the] defendant's lecherous conduct toward these young girls over whom he exercised discipline, control, and supervision."

Similarly, Hillary's testimony was indicative of "defendant's lecherous conduct toward" his adolescent biological daughters "over whom he exercised discipline, control, and supervision." See Pignolet, 465 A.2d at 182.

### 3. Reasonable Necessity

The defendant avers that "[t]here was absolutely no necessity to introduce the * * * testimony that [defendant] * * * touched [Hillary]" because defendant's "accidental" conduct described in Hillary's testimony is inconsistent with the deliberate acts allegedly done to Maya. Additionally, defendant asserts that Hillary's "testimony was not relevant to show any common scheme or plan" because the acts were so disparate in "the way [that] [they] [were] carried out."

As we have said in the past, however, "[w]hen charges of sexual abuse hinge upon a credibility contest between [the] defendant and [the] child complainant, relevant evidence of prior sexual misconduct is reasonably necessary to support the complainant's testimony." Mohapatra, 880 A.2d at 808. In this case, there was no physical evidence or third-party eyewitness testimony presented at trial. In addition, defendant attacked Maya's credibility and argued in his motion for a new trial that the state had not proven its case beyond a reasonable doubt. Significantly, the defense's theory was that the sexual assaults never occurred. In his closing statement, defendant's counsel argued that the case was not about sexual assault; rather, it was "about a young lady, who according to her own testimony, wants stuff, who is spoiled, who is vengeful and wanted her family back together." Accordingly, this case turned upon Maya's credibility. Thus, Hillary's testimony was indeed reasonably necessary for the state to prove its case. Therefore, we will not disturb the trial justice's ruling.

### 4. Limiting Instruction

Lastly, defendant contends that the trial justice's limiting instruction "[w]as [f]undamentally [f]lawed" because she "[l]isted [a]ll [of] the [e]xceptions [i]n the [i]nstruction and [s]tated [that] the [e]vidence [w]as [a]dmissable to [s]how a [d]isposition." Particularly, defendant claims that the limiting instruction did not state "with particularity the specific

exception to which the other crimes evidence [was] relevant." Further, defendant also takes issue with the trial justice's instruction to the jury to consider the evidence "to show that [defendant] had a lewd disposition * * * to commit this type of crime."

During Hillary's direct examination, the trial justice provided a limiting instruction to the jury. The trial transcript provides:

> "Ladies and Gentlemen, evidence that * * * [d]efendant allegedly committed a sexual act or another act with the witness, [Hillary], which alleged act is not charged in this case, is admissible for a limited purpose. Under our Rules of Evidence it's very important that you understand the limited purpose for which this evidence would be allowed.
> "First I'll tell you what it's not allowed for. It's not admissible to show that * * * [d]efendant had a propensity to commit the acts charged in this case, but it is admissible to show motive, opportunity, intent, preparation, plan, and sense of mistake or accident. In other words, it is admissible to show a disposition, perhaps, but not as evidence that he had a propensity to commit the act alleged."

Thereafter, at the conclusion of trial, the trial justice reiterated to the jury the limited purpose for which Hillary's testimony was admitted:

> "Now I want to talk to you about some testimony that we heard from [Hillary]. Okay. You recall that I previously instructed you about the limited purpose of admitting testimony in this case of uncharged alleged incidents of sexual assault against [Hillary] * * *. To the extent that the evidence in this case included testimony about alleged incidents that were not charged by the [s]tate, and are not included in the [i]ndictment, that testimony was admitted for a limited purpose. It was admissible for a very limited purpose, such as to prove motive or to prove opportunity, to commit the charged offenses or as alleged proof of * * * [d]efendant's sexual intent or disposition. It was not admitted to prove the character of * * * [d]efendant in order to show that he acted in conformity with such uncharged alleged conduct."

In both instances, defendant did not raise an objection to the instructions provided by the trial justice.

We have recognized that a trial justice need not provide limiting instructions contemporaneously with the relevant evidence. See State v. Mitchell, 80 A.3d 19, 29 (R.I. 2013). Furthermore, "[a]ny issue as to the adequacy of that instruction is waived [if] [the] defendant [does] not raise an objection prior to the jury's deliberation." Id. at 29-30. Here, defendant waived his argument relating to the adequacy of the trial justice's limiting instructions because he failed to raise an objection either during the trial or prior to the jury's deliberation. Indeed, under our well-settled "raise-or-waive" rule, an issue not raised before a trial justice is not preserved for appellate review. Town Houses at Bonnet Shores Condominium Association v. Langlois, 45 A.3d 577, 584 (R.I. 2012).

**B**

**Motion for Judgment of Acquittal**

Finally, defendant argues that the trial justice erred in denying his motion for judgment of acquittal on count 5 of the indictment. He maintains that counts 4 and 5 both relate to the shower incident, which he describes as "one continuous incident." The defendant, therefore, contends that the evidence supports a finding of potential guilt on only count 4. We note that the verdict form provided to the jury described count 4 as when Maya "was in the shower, and [defendant] used his hand to effectuate touching of her vagina[,]" whereas count 5 pertains to when "she was in the shower, and he forced/coerced her into touching her own vagina with her hand[.]"

The state, both in its papers and at oral argument, seemingly conceded that defendant has a viable argument, albeit on an alternative theory. The state notes that there is a "salient distinction" between "sexual penetration" as contemplated in the first-degree sexual assault statute, § 11-37-2,[8] and "sexual contact" as proscribed in the second-degree sexual assault

---

[8] Section 11-37-2 provides that:

- 17 -

statute, § 11-37-4,[9] viz., § 11-37-4, unlike § 11-37-2, does not encompass sexual contact by the victim on his or her own body upon the accused's instructions.[10] The state argues, however, that the issue has been waived and must be raised through an application for postconviction relief.

We recognize that, by failing to renew his motion for judgment of acquittal at the close of his case, the defendant has waived his appellate argument in this regard. Nevertheless, we are of the belief that the evidence of the defendant's conduct relating to the so-called shower incident provides the basis for a conviction on only one charge of second-degree sexual assault. In the

"A person is guilty of first degree sexual assault if he or she engages in sexual penetration with another person, and if any of the following circumstances exist:

"(1) The accused, not being the spouse, knows or has reason to know that the victim is mentally incapacitated, mentally disabled, or physically helpless.

"(2) The accused uses force or coercion.

"(3) The accused, through concealment or by the element of surprise, is able to overcome the victim.

"(4) The accused engages in the medical treatment or examination of the victim for the purpose of sexual arousal, gratification, or stimulation."

[9] Section 11-37-4 provides that:

"A person is guilty of a second-degree sexual assault if he or she engages in sexual contact with another person and if any of the following circumstances exist:

"(1) The accused knows or has reason to know that the victim is mentally incapacitated, mentally disabled, or physically helpless.

"(2) The accused uses force, element of surprise, or coercion.

"(3) The accused engages in the medical treatment or examination of the victim for the purpose of sexual arousal, gratification, or stimulation."

[10] Section 11-37-1(8) defines sexual penetration as "sexual intercourse, cunnilingus, fellatio, and anal intercourse, or any other intrusion, however slight, by any part of a person's body or by any object into the genital or anal openings of another person's body, or the victim's own body upon the accused's instruction, but emission of semen is not required." Alternatively, § 11-37-1(7) defines sexual contact as "the intentional touching of the victim's or accused's intimate parts, clothed or unclothed, if that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification, or assault."

interest of justice and judicial economy, therefore, we vacate the judgment of conviction as to count 5.

## IV

## Conclusion

For the foregoing reasons, we vacate count 5 of the judgment of conviction and affirm the judgment of the Superior Court in all other respects. The record of this case shall be returned thereto.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Helberth Perez. |
| **Case Number** | SU-14-358-C.A.<br>(P1/13-56A) |
| **Date Opinion Filed** | June 6, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Flaherty, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For State:<br><br>Jane M. McSoley<br>Department of Attorney General |
| | For Defendant:<br><br>John Joseph Karwashan, Esq.<br>John M. Cicilline, Esq. |