July 14, 2025

**Supreme Court**

No. 2024-105-C.A.

(K3/22-274A)

State                         :

v.                          :

Olayinka Alege.               :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| State | : | |
| v. | : | |
| Olayinka Alege. | : | |

Present: Suttell, C.J., Goldberg, Robinson, and Long, JJ.

### O P I N I O N

**Justice Robinson, for the Court.** The defendant, Olayinka Alege, who is self-represented, appeals from a judgment of conviction and commitment on one count of simple assault and/or battery. On appeal, the defendant contends that the trial justice erred: (1) in denying his motion requesting a *Franks*[1] hearing; (2) in granting the state's motion *in limine* seeking leave to present certain evidence pursuant to Rule 404(b) of the Rhode Island Rules of Evidence; (3) in denying his motion to recuse; and (4) in violating his constitutional rights at the time of sentencing.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause as to why the issues raised in this appeal should

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

- 1 -

not be summarily decided.  After considering the written and oral submissions of the parties and after carefully reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.

For the reasons set forth herein, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The charge against defendant arose out of an incident that took place at the Edge Fitness club in Warwick, Rhode Island, on April 20, 2021.  According to the complaining witness, while both he and defendant were at the fitness club, defendant removed the complaining witness's sock and shoe and proceeded to massage his foot against his will.

On May 10, 2021, the Warwick Police Department filed a criminal complaint, charging defendant with one count of simple assault and/or battery.  On April 8, 2022, defendant was found guilty on that charge in the Third Division District Court.  On April 13, 2022, defendant filed a notice of appeal; and, on that same day, the case was transferred to and docketed in the Superior Court.

In June of 2023, a jury trial began; subsequently, the trial justice declared a mistrial as a result of the jury's inability to reach a verdict.  The trial justice scheduled a new trial for June 28, 2023.  On June 12, 2023, counsel for defendant

filed a motion to withdraw his appearance, which the trial justice granted on June 28. On that same date, a new attorney entered his appearance on behalf of defendant.

On July 20, 2023, defendant filed an objection to the state's "Motion *in Limine* to Present Evidence of Prior Wrongs or Acts."[2] A hearing on that motion took place on August 10, 2023, at which time defendant's second attorney orally moved to withdraw his appearance. The trial justice granted defense counsel's motion to withdraw, but he reserved decision on the state's motion *in limine*.[3]

On August 11, 2023, defendant filed a motion requesting that the trial justice recuse himself, which motion the trial justice denied after a hearing on August 24, 2023.

Thereafter, on September 15, 2023, defendant filed a *Franks* motion, requesting "an evidentiary hearing regarding the truthfulness of certain statements in the application and affidavit for the warrant authorizing his arrest." The state filed a timely objection to defendant's *Franks* motion. After a hearing on October 25, 2023, the trial justice denied defendant's motion.

---

[2]     We note that neither a copy of the state's motion *in limine* nor any memorandum filed in support thereof can be located in the Superior Court docket.

[3]     The trial justice revisited the state's motion *in limine* at a hearing on December 4, 2023. The trial justice indicated that he was making a provisional ruling to allow a particular witness to testify and that, if he ultimately deemed the witness's testimony admissible, he would issue a limiting instruction to the jury.

Following a second trial at which defendant represented himself, a jury found him guilty on the charge of simple assault and/or battery. On January 26, 2024, the trial justice first addressed defendant's motion for a new trial and denied it in pertinent part; he then proceeded to impose a one-year sentence, suspended with probation, as well as 140 hours of community service in addition to other conditions that are not relevant to this appeal. On February 14, 2024, defendant filed a valid notice of appeal. A judgment of conviction and commitment was entered on February 16, 2024.

We relate below the salient aspects of the pretrial hearings, the trial, and the sentencing.

## A

### Representation and Recusal

As previously noted, defendant's first attorney filed a motion to withdraw in the Superior Court on June 12, 2023. During a hearing on June 28, 2023, the trial justice granted the attorney's motion and defendant's new attorney entered his appearance. That attorney then requested that the trial date be changed from July 17, 2023 to September 11, 2023 so that he could adequately prepare for trial. Over the state's objection, the trial justice "reluctantly" granted defense counsel's request.

Additionally, at that June 28, 2023 hearing, the trial justice noted that he had previously ordered that defendant provide the court with his travel records and

"substantiation for his recent absences from the court * * *." The trial justice stated that defendant had not complied with the just-referenced order; and he further warned that, if defendant did not comply with the order, the court would consider imposing sanctions.

On August 10, 2023, at a hearing on the state's motion *in limine*, defendant's new attorney orally moved to withdraw his appearance. He indicated that the attorney-client relationship had become "completely untenable"—a characterization with which defendant was in agreement. The defendant stated that he wished to proceed *pro se*, and the trial justice granted the attorney's motion to withdraw. The trial justice also stated that he would appoint standby counsel for defendant.

On August 11, 2023, defendant filed a motion to recuse the trial justice from the case. The defendant based his motion on the claim that "the court's bias and partiality raise questions as to its ability to preside over this case fairly and impartially." Specifically, defendant raised concerns over the scheduling of hearing dates and trial dates. For example, he stated that the scheduling of the second trial "a mere three weeks after the mistrial" unduly burdened him. He further stated that, after he was no longer represented by his first attorney, the trial justice "engaged in retaliatory conduct with said attorney just one hour later by canceling a plea deal scheduled for July 7 and rescheduling the trial date, which was moved to July 17 when defendant expressed interest in accepting [the] plea deal, back on June 28th

* * *." The defendant also claimed that the trial justice abused his power when he asked for proof of defendant's travel records relative to occasions when defendant had been absent from court. Among other contentions, defendant additionally stated that the trial justice "[e]xpressed [d]isregard" for defendant when he stated that he was "less than satisfied with Mr. Alege's attitude towards this [c]ourt and less than impressed" with him at the time when he had agreed to move the trial date to September 11, 2023.

A hearing on defendant's motion to recuse took place on August 24, 2023, after which the trial justice denied the motion. In so doing, he reasoned that "the [c]ourt has * * * tried to accommodate scheduling in a way that would address all the concerns that [defendant had] highlighted." He further stated that all scheduling had been based upon the availability of all the parties, including defendant's counsel at the pertinent time. The trial justice noted that he had proposed that discussion of a potential plea deal should be scheduled before the trial date so as to not inconvenience members of the jury.

Additionally, the trial justice stated that he had requested defendant's travel records after defendant had indicated that he would not be available for a June 28th trial date because "he was going to be on a cruise." It was the trial justice's observation that defendant's unavailability was problematic because defendant "was on bail" and did not notify the court of his plans. He also observed that he had

- 6 -

continued the trial date to September 11th in order to give defense counsel more time to prepare. The trial justice further noted that, "in an abundance of caution to make sure that [defendant's] rights are represented and that he has effective counsel, the [c]ourt then indicated to [defendant] that he was going to appoint standby counsel in order to assure that * * * [defendant] receives the fair trial to which he is entitled." As previously noted, the trial justice then denied defendant's motion to recuse. The defendant then requested more time to prepare for trial, and the trial justice continued the trial date to December 4, 2023.

**B**

**The *Franks* Motion**

On September 15, 2023, defendant filed a motion requesting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). In that motion, defendant contended that there was "reliable evidence" that would demonstrate that the affidavit in support of the arrest warrant contained false material information that was supportive of the finding of probable cause. He added that, absent the "inclusion of said materially false or misleading statements and/or the omission of other material information, there was insufficient information in the warrant affidavit to support a finding of probable cause."

Specifically, defendant argued that two versions of an officer's report "highlight the first instance in which police deliberately or recklessly omitted

- 7 -

material facts from an official record concerning their investigation and efforts to prosecute the defendant." He also argued that the Warwick Police Department had issued a misleading subpoena for surveillance video at the fitness club and that "the 'administrative subpoena' did not include a certification under oath by the attorney general or state police superintendent." The defendant further contended that the surveillance video did not show what it purported to show. Additionally, it was defendant's contention that handwriting analysis evidenced that the complaining witness's signature on the statement to the police was different from the "handwritten allegations" contained in the body of the statement to the police. On the basis of these arguments, defendant argued that he had "established the requisite showing for a *Franks* hearing, during which it is expected that the evidence adduced will demonstrate the arrest warrant must be voided and its fruits excluded to the same extent as if probable cause was lacking on the face of the affidavit."

On October 25, 2023, the trial justice heard arguments on defendant's motion for a *Franks* hearing. At that hearing, defendant argued that there was "clear evidence that there [were] false and misleading statements that were made with the reckless disregard for the truth and reckless omission of material information that would have been insufficient in the finding of probable cause." In particular, defendant asserted that the statement in the affidavit to the effect that the officer

- 8 -

reviewed the surveillance footage of the incident and that it "support[ed] the victim's version of events" was false.

The state contended that defendant's motion for a *Franks* hearing was both procedurally and substantively meritless. The state first contended that "the statement in [the affidavit] is that it supports the victim's version of events. * * * It does not say that it definitely states that the event happened." In addition, the state emphasized that the opinion in the *Franks* case relates to search warrants rather than arrest warrants. The state further posited that, even if defendant were granted a *Franks* hearing, there was no procedural remedy available to him because "no other substantive evidence [was] gleaned after the arrest warrant."

After citing the applicable standard as articulated in *State v. Hudgen*, 272 A.3d 1069 (R.I. 2022), the trial justice denied defendant's motion for a *Franks* hearing. The trial justice observed that the surveillance video, which "may be subject to interpretation," showed defendant to be situated "by the complaining witness" as well as interacting with him. He further stated that the statement in the affidavit that the video supported the complaining witness's claim was not "knowingly false" nor was it intentionally made "with reckless disregard for the truth;" rather, it "simply generally states that it supports the victim's version of events." The trial justice also concluded that "[t]he complaining witness' statement on its face would support a finding of probable cause."

## C

## The State's Motion *in Limine*

On July 20, 2023, defendant filed an "opposition" to the state's motion *in limine*, which sought leave "to [submit] evidence of alleged prior wrongs or acts pursuant to Rule 404(b) of the Rhode Island Rules of Evidence." The defendant noted that the state sought to introduce testimony from two different adult males who had "voluntarily removed their shoes for [defendant]." He further contended that testimony concerning these prior instances differed from the complaining witness's allegations and that admitting that testimony would "show only bad character and likely confuse the jury."

The state's motion *in limine* and defendant's objection thereto was addressed at a hearing on December 4, 2023. At that hearing, the trial justice noted that the state's witness, Alexander Harrington, was present so that the court "could hear a preview of the testimony in order to make its determination."[4] The trial justice then permitted a *voir dire* examination of Mr. Harrington to take place.

Mr. Harrington first testified as to an incident that took place at the Warwick Edge Fitness club on February 24, 2021. According to Mr. Harrington, he was using

---

[4] Although it had previously been indicated that the state was seeking to introduce testimony from two individuals, it was represented at the December 4th hearing that the state would offer the testimony from only one individual, Alexander Harrington.

the locker room at the fitness club when defendant approached him and "asked [him] about the shoes [he] was wearing." He stated that, at that time, he was wearing "Converse" sneakers. Mr. Harrington testified that, after defendant's initial question, Mr. Harrington put his foot on a bench and untied his shoes. Mr. Harrington further testified that, after he handed defendant one of his shoes, defendant then "grabbed [Mr. Harrington's] feet, touched [his] feet, and then also proceeded to try to take off [his] sock * * *." He further testified that, when defendant grabbed his foot, he began "basically massaging or feeling it." Mr. Harrington testified that he did not consent to defendant touching his foot and that it was offensive to him.

At the conclusion of Mr. Harrington's testimony, the state contended that the introduction of this testimony at defendant's trial would show that defendant "acted with intent" and that this was the "planned MO * * * that he would follow to touch someone's foot." It was the state's position that the factual patterns of defendant's encounters with both Mr. Harrington and the complaining witness were "strikingly similar." To that end, the state argued that both situations "occurred at the same location, Edge Fitness in Warwick; they involve the same type of a shoe[,] * * * the same type of approach where [defendant] is alleged to have asked * * * to check on a shoe, and then progressed to the sock and then the foot."

- 11 -

For his part, defendant contended that Mr. Harrington's testimony would be prejudicial. He asserted that the situations were "strikingly different" and that the incident with Mr. Harrington was distinct from that of the complaining witness because Mr. Harrington was "a grown man who gave consent." The defendant contended that the fact that Mr. Harrington waited to report the incident until he saw the report of the incident involving the complaining witness demonstrated that "he was okay with it."

In rendering a provisional ruling to allow the testimony of Mr. Harrington, the trial justice stated that Mr. Harrington's testimony would be evidence of intent, motive, or plan. The trial justice stated that, during the trial, he would first allow the complaining witness to testify; and, if the complaining witness's testimony was similar to that of Mr. Harrington, he would allow Mr. Harrington to testify. The trial justice added that, if he did permit Mr. Harrington to testify, he would "issue a limiting instruction as to what the purpose of the testimony is and instruct the jury in that regard."

**D**

**The Trial**

**1. The Testimony of the Complaining Witness**

On December 5, 2023, the trial commenced, and the complaining witness was the first witness called by the prosecution to testify. He testified that, on the date of

the incident, he had gone to the Edge Fitness club by himself. He noted that, while he was "working out in the turf area" of the gym, he was approached by defendant. The complaining witness testified that defendant proceeded to ask him about the shoes he was wearing. He testified that he was wearing "low Converse" sneakers at that time. According to the complaining witness, defendant proceeded to ask him if he had blisters on his foot. The complaining witness testified that, "as [he] was giving [his] answer," defendant grabbed his foot and "took the shoe off [his] foot without asking * * *." He further testified that defendant then removed his sock and "started to massage [his] feet up and down * * *." The complaining witness testified that he did not give defendant permission to touch him.

The complaining witness testified that, after the encounter with defendant, he immediately contacted his parents to come and pick him up. He further testified that, upon being picked up, he informed his father about the incident. It was the complaining witness's testimony that, once his father learned what had happened, they returned to the fitness club and spoke with a manager about the incident. He added that management then pulled surveillance video footage; however, management did not allow the complaining witness or his father to review the video at that time.

The complaining witness testified that, later that evening, they reported the incident to the Warwick Police Department. He noted that the police gave him a

form to complete. According to the complaining witness, he orally dictated his statement to his father, who "wrote it for [him] word for word what [he] said" because he was still in a "state of shock" and was "rattled." The complaining witness next identified the surveillance video that had been retrieved from Edge Fitness, and the video was admitted into evidence as a full exhibit. He testified that the contents of the video accurately reflected what had happened on April 20, 2021.

At the conclusion of the complaining witness's testimony, the trial justice indicated that he would rule on the state's motion *in limine*. The trial justice stated that, although defendant had emphasized that the age of the complaining witness and Mr. Harrington were different and the sequence of events was not identical, "the contours of the allegation are the same." Importantly, he added the following:

> "[C]ritically, from the [c]ourt's perspective, what is critical in terms of using this as proof of intent or plan is the initiation of the interaction, the fact that both testified that the interaction was prefaced by a discussion about shoes and interest in shoes, the quality of the shoes, * * * what kind of impact the shoes may have had on the feet during exercise, * * * and alleged movement towards a pulling off of a sock and a grabbing of a foot. So because of the initiation of the interaction, not so much the fact that the foot was massaged or not massaged, the [c]ourt does find that it may be used as proof of an intent or plan."

The trial justice ruled that Mr. Harrington would be allowed to testify as to his interaction with defendant.

- 14 -

## 2. The Testimony of Mr. Harrington

Prior to the testimony of Mr. Harrington, the trial justice provided the jury with the following limiting instruction:

> "Now that Mr. Harrington is testifying, I want to give you another instruction, which is, you're going to hear testimony from Mr. Harrington. Whatever that testimony is I'm going to instruct you as follows: That the testimony that Mr. Harrington may present is not to be used by you to judge whether the defendant committed any crime or any allegation in regards to what his testimony may be. His testimony may only be used by you for proof of the defendant's intent or plan, for no other purpose whatsoever."

Mr. Harrington then proceeded to provide testimony at trial that was substantially the same as his testimony at the *voir dire* examination on December 4.

### E

### The Verdict and Sentencing

On December 8, 2023, the jury found defendant guilty on one count of simple assault and/or battery. On January 26, 2024, the trial justice sentenced him to a term of one year, suspended with probation, as well as 140 hours of community service; and he also imposed other conditions that are not relevant to this appeal. In determining what would be an appropriate sentence, the trial justice evaluated the applicable sentencing criteria. He considered the severity of the crime; the importance of the case to defendant and to the complaining witness; the evidence presented; defendant's personal, educational, and employment background; the

- 15 -

potential to rehabilitate defendant; social deterrence; and "the appropriateness of the punishment."

## II

## Issues on Appeal

The defendant raises four issues on appeal. He first contends that the trial justice erred in denying his motion made pursuant to *Franks v. Delaware*. Second, defendant states that the trial justice erred in granting the state's Rule 404(b) motion *in limine*. Third, defendant argues that the trial justice erred in denying his motion to recuse. Fourth, defendant contends that the trial justice erred in sentencing him in view of his belief that the sentence he received was "egregious." We shall address defendant's contentions *seriatim*.

## III

## Analysis

## A

## The *Franks* Motion

On appeal, defendant contends that the trial justice erroneously denied his *Franks* motion. Among other arguments, defendant states that, in the affidavit filed in support of the application for an arrest warrant, "the officers spelled out five very specific accusations, as alleged by the complainant * * *." He further posits that the officers alleged that the surveillance video supported the complaining witness's

- 16 -

version of events "despite not one of the 'versions' being remotely observable on the surveillance video." The defendant asserts that it is "undisputed that the video does not show any of the five allegations." He further points to "omissions" and "additional evidence of misconduct" that the trial justice overlooked when denying the *Franks* motion.

For its part, the state contends that the trial justice did not err because reliable hearsay can be used to establish probable cause for the issuance of a warrant. It also notes that the trial justice found that, even if the officer's description of the video was inaccurate, the affidavit contained the complaining witness's statement, which would support a finding of probable cause.

It is well established that this Court reviews "rulings denying *Franks* hearings with deference." *State v. Verrecchia*, 880 A.2d 89, 99 (R.I. 2005); *see also State v. DeMagistris*, 714 A.2d 567, 576 (R.I. 1998) ("[W]e review a lower court's determination that the defendant failed to satisfy the *Franks* standard with deference."). It has been further established that the "party seeking a *Franks* hearing bears the burden of proof." *Verrecchia*, 880 A.2d at 99.

The United States Court of Appeals for the First Circuit has indicated that the Fourth Amendment "demands that an application for an arrest warrant contain sufficient information to allow the issuing official * * * to make a practical, common-sense decision whether, given all the circumstances set forth in the

application before him[,] there is a fair probability that a crime has been committed." *United States v. Barbosa*, 896 F.3d 60, 67 (1st Cir. 2018) (Selya, J.) (internal quotation marks, deletion, and brackets omitted). An application for an arrest warrant is presumptively valid; however, a defendant "may be able to rebut this presumption and challenge the veracity of the warrant application at a pretrial hearing. * * * Such a hearing is eponymously called a *Franks* hearing." *Id.* (internal quotation marks omitted).[5]

This Court has made it clear that a defendant is "entitled to a hearing to challenge the veracity of factual statements contained in an affidavit when [the defendant] make[s] a substantial preliminary showing that a false statement [made] knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Hudgen*, 272 A.3d at 1084 (internal quotation marks and brackets omitted); *see also Franks*, 438 U.S. at 155-56. A defendant requesting such a hearing is required to make an offer of proof that "point[s] out specifically the portion of the warrant affidavit that is claimed to be false

---

[5]    We are cognizant of the fact that the *Franks* case involved a search warrant rather than an arrest warrant. For the purposes of this case, we have assumed without deciding that the various criteria set forth in *Franks* would be applicable to the arrest warrant at issue in the instant case.

* * *." *Franks*, 438 U.S. at 171; *see also Verrecchia*, 880 A.2d at 99 (noting that the "party seeking a *Franks* hearing bears the burden of proof").

Additionally, the alleged false contents of the warrant application must be "traceable to the affiant's intent to deceive the magistrate issuing the warrant or * * * the affiant [must have] proceeded with reckless disregard for the veracity of the statements included in his or her affidavit." *DeMagistris*, 714 A.2d at 575. The Court in *Franks* also stated that "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-72.

In the case at bar, to support his request for a *Franks* hearing, defendant points only to the following statement in the affidavit: "Officers were able to obtain Edge Fitness video surveillance of the incident, which supports the victim's version of events." We perceive no error in the trial justice's observations that the surveillance video, which he acknowledged could be subject to interpretation, showed defendant to be situated "by the complaining witness" and interacting with him. And defendant does not deny or refute that the Edge Fitness surveillance video reflects that defendant was in close proximity to the complaining witness and that defendant interacted with the complaining witness in some way. Moreover, as the trial justice noted, the statement only generally indicates that the video supports the complaining

witness's version of events.  It is therefore our view that this statement in no way rises to the level of a material falsehood or that it is indicative of an intent to deceive.

Even assuming *arguendo* that the allegation concerning the statement in the affidavit is true, we are unable to say that this would vitiate the finding of probable cause.  Having carefully reviewed the record, it is our opinion that there remained more than sufficient evidence to support a finding of probable cause; furthermore, the alleged misstatement was not critical to the finding of probable cause.  The affidavit at issue describes the complaining witness's statement to the police in that it indicates that defendant purportedly massaged the complaining witness's foot without his consent.  Accordingly, as noted by the trial justice, the complaining witness's statements alone support the finding of probable cause.

For these reasons, we conclude that defendant was not entitled to a *Franks* hearing and that the trial justice did not abuse his discretion in denying such a hearing.

**B**

**The State's Motion *in Limine***

The defendant next contends that the trial justice erred in granting the state's motion for the admission of Mr. Harrington's testimony pursuant to Rule 404(b) because, in defendant's view, the proposed testimony "was irrelevant and inadmissible as it was highly prejudicial to the jury."  The defendant suggests that

Mr. Harrington's testimony was too dissimilar from the testimony of the complaining witness. For example, he claims that Mr. Harrington "testified that the defendant asked to see his shoe and the witness removed it himself, a voluntary act * * *, unlike the complainant who reported an unconsented act." The defendant further contends that it was a "far stretch" for the trial justice to find that the testimony was evidence of intent "as a conversation about shoes and pain points on the foot, in the middle of a consensual conversation is not a crime and someone feeling 'uncomfortable' is not criminal activity * * *."

The state counters by arguing that the trial justice properly admitted the testimonial evidence pursuant to Rule 404(b) in that the "prior bad act served to demonstrate the defendant's intent or plan to commit the unwanted touching." It adds that the evidence was relevant and not unduly prejudicial.

This Court has established that the "admissibility (*vel non*) of evidence is a matter confided to the sound discretion of the trial justice; this Court will not interfere with a trial justice's decision in that regard unless there has been a clear abuse of discretion and the evidence was both prejudicial and irrelevant." *State v. Merida*, 960 A.2d 228, 237 (R.I. 2008); *see also State v. Ceppi*, 91 A.3d 320, 331 (R.I. 2014) ("It is a general rule that we will not disturb a trial justice's evidentiary ruling without first determining that the ruling constitutes a clear abuse of his or her discretion.") (internal quotation marks and brackets omitted).

Rule 404(b) provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

Rule 404(b) is a rule governing the admissibility of evidence of prior bad acts, crimes, and wrongs; it reflects an awareness that "admitting this kind of evidence presents the risk that jurors might convict a defendant for a crime other than the one being charged." *State v. Reis*, 815 A.2d 57, 61-62 (R.I. 2003); *see also State v. Pratt*, 641 A.2d 732, 742 (R.I. 1994). For that reason, we have emphasized that "the trial justice must carefully weigh the probative value of the evidence against the danger of unfair prejudice * * *." *Reis*, 815 A.2d at 62 (quoting *Pratt*, 641 A.2d at 742). And "[i]f the trial justice determines that the probative value does outweigh the prejudicial effect, he should offer a specific instruction to the jury as to the limited purpose for which the evidence is being introduced." *Id.* (internal quotation marks and brackets omitted).

Turning to the instant case, it is our opinion that the trial justice did not abuse his discretion in allowing Mr. Harrington's testimony pursuant to Rule 404(b). Although we have given due consideration to defendant's attempt at distinguishing Mr. Harrington's testimony from that of the complaining witness, we agree with the

trial justice to the effect that "the contours of the allegation are the same." *See State v. Perez*, 161 A.3d 487, 496 (R.I. 2017) (holding that the trial justice did not abuse her discretion under Rule 404(b) in allowing testimony relative to other, uncharged allegations since the "allegations were sufficiently similar to the charged acts"). The trial justice carefully compared Mr. Harrington's testimony with the testimony of the complaining witness, noting the parallels between the allegations. Notably, he pointed to "the fact that both testified that the interaction was prefaced by a discussion about shoes and interest in shoes, the quality of the shoes, * * * what kind of impact the shoes may have had on the feet during exercise, * * * [and] an alleged movement towards a pulling off of a sock and a grabbing of a foot." He then found that, based on this reasoning, the testimonial evidence was admissible in that it could be used as proof of an intent or a plan. We commend the trial justice for meticulously poring over the record and for referencing the specific Rule 404(b) exception to which the evidence applied. *See State v. Sorel*, 746 A.2d 704, 707 (R.I. 2000).

Accordingly, it is our view that the trial justice did not abuse his discretion in determining that the testimonial evidence fit within the contours of the Rule 404(b) exception.

# C

## The Motion to Recuse

The defendant's third contention is that the trial justice erred in denying his motion to recuse. He argues, *inter alia*, that the trial justice's "biases prevented the defendant from his constitutional right to a lawyer and a fair trial." The defendant suggests that the trial justice demonstrated bias in the scheduling of the case as well as in comments made about defendant. He asserts that he was "left with no choice but to represent himself as to ensure the [c]ourt did not use its authority to manipulate the case against the defendant with another attorney." The state, on the other hand, contends that the trial justice's scheduling of trial and hearing dates does not demonstrate any personal bias or prejudice against defendant.

We have clearly stated that "judicial officers are duty-bound to recuse themselves if they are unable to render a fair or an impartial decision in a particular case." *Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 185 (R.I. 2008) (internal quotation marks omitted); *see also Kelly v. Rhode Island Public Transit Authority*, 740 A.2d 1243, 1246 (R.I. 1999). "At the same time, * * * justices have an equally great obligation **not** to disqualify themselves when there is no sound reason to do so." *Ryan*, 941 A.2d at 185. A party moving for recusal must demonstrate "affirmatively that the trial justice had personal bias or prejudice by reason of a preconceived or settled opinion of a character calculated to impair his

impartiality seriously and to sway his judgment." *Cavanagh v. Cavanagh*, 118 R.I. 608, 621, 375 A.2d 911, 917 (1977).

Upon carefully reviewing the record, it is our view that the trial justice properly denied defendant's motion to recuse. The timeline in this case very clearly indicates that the trial justice was attempting to accommodate all parties, but particularly defendant, throughout the entirety of the case. After a mistrial had been declared, the trial justice scheduled a trial date for June 28, 2023. And when counsel for defendant withdrew on that date, the trial justice reassigned the trial date to September 11, 2023 at the request of defendant's new attorney. When defendant's second attorney withdrew from the case, the trial justice once again continued the trial date to December 4, 2023. At that time, the trial justice also appointed standby counsel for defendant.

The trial justice's management of the calendar in this case demonstrates that he sought to maintain an orderly and timely schedule while consistently being cognizant of defendant's rights and needs—notably in providing him with additional time to prepare for trial. While attempting to deal with the case in an efficient manner, the trial justice, over the state's objection, granted two continuances so that defendant or defendant's counsel had adequate time to prepare. We also underscore that the record reflects that the trial justice exhibited patience and respect towards defendant at all times, and we reject any attempt by defendant to suggest otherwise.

For these reasons, it is quite clear to us that the trial justice's actions in this case demonstrate neither prejudice nor a personal bias against defendant, and we therefore conclude that the trial justice's denial of defendant's motion to recuse was proper. *See Mattatall v. State*, 947 A.2d 896, 903 (R.I. 2008).

## D

## Sentencing

Finally, defendant argues that the trial justice erred in sentencing him because the trial justice, "at the prosecutor's recommendation, imposed a tax upon the defendant * * *, which was overly harsh and disproportionate with simple battery guilty verdicts in Rhode Island." The state asserts that this Court should not consider defendant's argument relative to the sentence he received because he has not filed a motion pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure.

This Court has established that "a challenge to a criminal sentence must begin with the filing of a motion in the Superior Court pursuant to the provisions of Rule 35 of the Superior Court Rules of Criminal Procedure." *State v. Day*, 925 A.2d 962, 985 (R.I. 2007). Absent extraordinary circumstances, "we will not consider the validity or legality of a sentence on direct appeal * * *." *Id.* (internal quotation marks omitted).

Because the defendant has failed to file a Rule 35 motion and because he has failed to point to any extraordinary circumstances that would call for consideration

of the validity or legality of his sentence, we decline to consider on direct appeal the defendant's argument relative to sentencing. *State v. Garcia*, 316 A.3d 1223, 1254 (R.I. 2024); *see State v. Bettencourt*, 723 A.2d 1101, 1114 (R.I. 1999) (stating that "because the issue raised does not amount to an extraordinary circumstance, the absence of a determination made pursuant to a Rule 35 motion precludes this Court's consideration of the defendant's challenge to his sentence").

# IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to that tribunal.

Justice Lynch Prata did not participate.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



# OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Olayinka Alege. |
| **Case Number** | No. 2024-105-C.A. (K3/22-274A) |
| **Date Opinion Filed** | July 14, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Luis M. Matos |
| **Attorney(s) on Appeal** | For State: <br><br> Devon Flanagan <br> Department of Attorney General <br><br> For Defendant: <br><br> Olayinka Alege, *pro se* |